**DARLENE L., et al., Plaintiffs,**

v.

**ILLINOIS STATE BOARD OF EDUCATION, et al., Defendants.**

No. 81 C 1768.

United States District Court,
N.D. Illinois, E.D.

June 30, 1983.

Marilyn Longwell, Chicago, Ill., for plaintiffs.

Neil F. Hartigan, Atty. Gen., Paul Millechap, Asst. Atty. Gen., John M. Collins, Brydges, Riseborough, Morris, Franke and Miller, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This action is before the court on motion of defendants to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. For the reasons set forth below, defendants' motion to dismiss is granted.[1]

### FACTS

Plaintiff in this action is Darlene L., a child who allegedly began to manifest a severe behavior disorder in the 1978–1979 high school year. A multidisciplinary con-

---

1. The court offered to treat this motion as one for summary judgment, and gave the parties the opportunity to submit extra materials to the court. Since neither party submitted any further materials, the court found no reason to treat this as a motion for summary judgment. The result in this case would not change if treated as a motion for summary judgment, because there is no genuine issue of material fact, and the same conclusion would be reached on the issues of law.

ference was held on November 14, 1980 to determine an appropriate educational placement for Darlene pursuant to the Education for All Handicapped Children Act ("EHA"), 20 U.S.C. § 1401 et seq. At the conference, defendant Northwest Suburban Special Education Organization ("NSSEO") and defendant Board of Education of Township High School District No. 211 ("Board of District 211"), determined in agreement with the parents of Darlene that she should be placed in a private residential facility because of her severe behavior disorder. All three parties to the conference agreed that the most appropriate placement for Darlene would be at the Institute of Living in Hartford, Connecticut, a psychiatric hospital.

District 211 personnel then submitted forms requesting authorization for Darlene's placement at the Institute of Living ("Institute") to the Illinois State Board of Education ("SBE") pursuant to ¶ 14–7.02 of the Illinois School Code, Ill.Rev.Stat. ch. 122, ¶ 14–7.02, and the rules and regulations promulgated thereunder. Paragraph 14–7.-02 grants the SBE authority to promulgate rules and regulations for determining when placement in a private special education facility is appropriate. This section also provides that the Governor's Purchased Care Review Board ("Governor's Board") shall review the costs of special education and related services provided by non-public schools or special education facilities and shall approve or disapprove such facilities in accordance with the rules established by it with respect to allowable costs. Thus, the SBE must approve all facilities at which placements are made, and the Governor's Board must approve the costs of each facili-

ty before the SBE will authorize placement of a child in a private facility.

In this case, the SBE refused to approve the placement of Darlene at the Institute on the basis that it is a psychiatric hospital providing psychiatric services. Approval of placement at the Institute would violate a Memorandum of Understanding entered into between the SBE, the Governor's Board, and other state agencies, as well as rules and regulations adopted by the defendants.[2] Through these rules and regulations and the Memorandum of Understanding, the state adopted a policy of denying approval of private placements in psychiatric hospitals. Under section 1401(17) of the EHA, funds available under the Act need not be used to reimburse for medical services other than for diagnostic or evaluative purposes. The SBE has taken the position, through its rules and the Memorandum of Understanding, that psychiatric treatment provided at psychiatric hospitals is medical treatment and therefore not reimbursable under the EHA. On this basis, the SBE refuses to approve payment for any placements in psychiatric hospitals, including the placement of Darlene at the Institute of Living.

Plaintiff has brought this action against the SBE, the Governor's Board, the Board of District 211, the NSSEO, and various others to compel these defendants to approve and pay the cost of her placement at the Institute of Living. Plaintiff alleges in her complaint that the defendants' denial of her placement at the Institute of Living denies her a free appropriate education which she claims is guaranteed by the EHA, the Rehabilitation Act, equal protection and

---

**2.** Under the Memorandum of Understanding, entered August 26–27, 1980 by the SBE, the Governor's Board, and other state agencies, the SBE agreed not to approve any new placements in psychiatric hospitals. Pursuant to this Memorandum of Understanding, the SBE adopted *Rules and Regulations for Approval of Non-Public Facilities Educating Handicapped Students under Section 14–7.02 of the School Code,* under which the SBE will not approve placements at private facilities unless the Governor's Board approves the costs (Rule 8.05.2). The Governor's Board then adopted rules pro-

hibiting approval of costs for services provided by licensed physicians, which would include psychiatrists, except for evaluative and diagnostic purposes. The SBE also adopted a rule which provides that no facility may be approved unless it is at no cost to the parents pursuant to Section 14–7.02 of the School Code. Since psychiatric hospitals include in their charge fees for services provided by licensed physicians such as psychiatrists, and these costs are not approved by the Governor's Board, no psychiatric hospitals will be approved by the SBE under these new rules.

due process. She further alleges that the Memorandum of Understanding and the rules and regulations adopted by the defendants which bar approval of placements at psychiatric hospitals also violate these rights. Defendants have moved to dismiss on the ground that plaintiff has failed to state a claim upon which relief may be granted under the EHA, the Rehabilitation Act, and the Constitution.

## MOTION TO DISMISS

In considering a Rule 12(b)(6) motion to dismiss, a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The court must accept as true all material facts well pleaded in the complaint, and must make all reasonable inferences in the light most favorable to the plaintiff. *City of Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir.1976). The court need not strain, however, to find inferences available to the plaintiff which are not apparent on the face of the complaint. *Coates v. Illinois State Board of Education,* 559 F.2d 445, 447 (7th Cir.1977).

### Education for All Handicapped Act

Plaintiff alleges that, by denying approval of her placement at the Institute of Living or at any other psychiatric hospital, defendants have denied her right to a free appropriate education guaranteed under § 1415 of the EHA. Plaintiff asserts that the EHA creates substantive rights in individual handicapped children, and that a private implied cause of action is available to enforce those rights. In response, defendants argue that the EHA is merely a funding statute creating no substantive rights in individuals. There is support in this district for both views. *Compare McCowen v.*

Hahn,[3] No. 78 C 4233, slip op. at 8–11 (N.D.Ill. July 27, 1981), *with Parks v. Pavkovic,* 536 F.Supp. 296 (N.D.Ill.1982); *William S. v. Gill,* 536 F.Supp. 505 (N.D.Ill. 1982).

However, the Supreme Court has recently indicated that the EHA permits parents to bring a civil action in the district court about any matter relating to the child's evaluation and education, and that the court is authorized to grant such relief as it determines appropriate. *Board of Education of Hendrick Hudson Central School District v. Rowley,* —— U.S. ——, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982). *See also Doe v. Kroger,* 710 F.2d 1209 at 1213 (7th Cir.1983). Thus, it appears that the EHA does create substantive rights in individuals which may be enforced in the district court, although the Court in *Rowley* stressed that compliance with the procedural requirements of the Act in most cases will assure that all substantive requirements of the Act have been met. The court finds in this case, however, that the rules and regulations adopted by the defendants do not violate any substantive rights created under the Act. To the contrary, the rules adopted by the defendants implement the express provisions of the Act.

Section 1412(1) of the EHA requires states to have in effect a policy that assures all handicapped children the right to a free appropriate public education. The term "free appropriate public education" is defined as special education and related services which are provided at public expense, under public supervision and direction and without charge, which meet the standards of the state educational agency, and include preschool, elementary or secondary education, and are provided in conformity with the Individualized Education Program required by § 1414(a)(5). 20 U.S.C. § 1401(18). "Related Services" are defined in the Act as:

---

**3.** The court deciding *McCowen* noted in a later decision that its holding in *McCowen,* that no substantive rights were created by the EHA, might be called into question under dictum in

*Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981). *Mark R. v. Board of Educ., Bremen Commun. H.S. Dist.,* 546 F.Supp. 1027, 1032 n. 6 (N.D.Ill.1982).

... transportation, and such developmental, corrective and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education, and includes the early identification and assessment of handicapping conditions in children.

20 U.S.C. § 1401(17). Thus, under the specific language of the Act, all medical services, except those provided for evaluative and diagnostic purposes, are specifically excluded from the "related services" which states must provide as part of a free appropriate education.

Plaintiff asserts that defendants have erroneously, arbitrarily and irrationally interpreted § 1401(17) to exclude payment for psychiatric services. Plaintiff apparently argues that psychiatric services are "psychological services," which are specifically included in the definition of related services. Plaintiff further asserts that psychiatric services may be a related service which is necessary for a child to benefit from the educational services provided for in the act. These contentions are not supported by the language of the statute, the regulations promulgated under the statute, or the relevant case law.

■ Psychiatrists, in contradistinction to psychologists, counselors and other providers of psychological services, are licensed physicians whose services are appropriately designated as medical treatment. The regulations promulgated by the Secretary of Education under the act reflect this important distinction. Medical services are defined as those provided by a *licensed physician* to determine a child's medically related handicapping condition. 34 C.F.R. Part 300.14(4). The regulation defining psychological services deals primarily with psychological evaluation. No mention is made of psychiatric treatment. 34 C.F.R. Part 300.-14(8). The comment to the regulation defining related services states that related psychological services may be provided "by persons from varying professional backgrounds with a variety of operational titles, depending upon requirements by individual states." Although a number of possible providers of services are then listed in the comment, psychiatrists or other medical doctors are notably absent. These administrative interpretations of the Act support the conclusion that psychiatric services are not "related services" which states must provide as part of a free appropriate education.

■ The court therefore finds that, under the express language of § 1401(17), the defendant state agencies have properly deemed psychiatric services to be medical services since they are provided by licensed physicians. As medical services, they need be provided under the Act by the state only to the extent they are for evaluative and diagnostic purposes. This decision conforms to the clear Congressional intent that the EHA is for educational purposes, not medical treatment.

This interpretation of § 1401(17) is also mandated by two recent Supreme Court decisions, in *Pennhurst v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), and *Board of Education v. Rowley*, —— U.S. ——, 102 S.Ct. 3034, 3035, 73 L.Ed.2d 690 (1982). In *Pennhurst*, the Court interpreted the Developmentally Disabled Assistance and Bill of Rights Act ("DDA"), 42 U.S.C. § 6000 *et seq.*, an act similar in many respects to the EHA.[4] The Court found that the DDA was merely a funding statute enacted pursuant to Congress' spending power, creating no substantive rights in

---

**4.** The EHA, like the DDA, creates a federal-state grant program under which the federal government provides financial assistance to participating states to aid them in creating programs to educate the handicapped. Compliance with both statutes is voluntary; states are given the choice of complying with the conditions set forth in the act or foregoing the benefits of federal funding. The two statutes are similar in their goals, organizational structure and in the specific language of the funding provisions.

individuals. The Court stressed the need for Congress to clearly express all conditions imposed upon states in return for federal funds. The court concluded that states cannot be held to conditions not expressly and unambiguously imposed in the legislation.

In *Board of Education v. Rowley, supra,* the Court made similar observations about the EHA. In finding that the EHA does not require states to maximize the potential of each handicapped child, the court noted that any other view would be "contrary to the fundamental proposition that Congress, when exercising its spending power, can impose no burden upon the states unless it does so unambiguously". 102 S.Ct. at 3042, n. 11. The court further stated that it would not ignore the statutory language and legislative intent to find that Congress had imposed upon the states a burden of unspecified proportions, to be revealed only through a case-by-case adjudication in the courts. *Id.* Thus, the court recognized the unfairness of imposing large financial burdens on states on the basis of broad interpretations of ambiguous language in funding statutes like the EHA.

From the decisions in *Rowley* and *Pennhurst,* it is clear that the Courts may not expansively interpret provisions of funding statutes such as the EHA to require states to provide any services which are not explicitly required by the statute. This reasoning compels the court to reject plaintiffs' arguments for an expansive interpretation of § 1401(17), and to conclude that states may properly consider psychiatric services as medical services and therefore not "related services" which the state must provide as part of a free appropriate education. A contrary ruling in this case would result in imposing a great indeterminate financial burden on the states, and would divert the limited funds available for special education to subsidize the high cost of psychiatric care

for a relatively small number of mentally disturbed children, without any indication that Congress intended such a result.

The decision in *Board of Education v. Rowley, supra,* is also significant to this case for its holding that the EHA does not require states to maximize the potential of each handicapped child. The Court has thus recognized the difference between requiring an appropriate education and requiring the *most* appropriate education. The EHA does not require states to provide the most appropriate learning environment, but instead requires states to provide meaningful access to an appropriate education which does not exceed the conditions explicitly imposed in the Act to qualify for funds.

Unfortunately, the funding available for special education does not permit, and the EHA does not require, that states place each handicapped child in an environment most ideally suited to his or her particular needs at no cost to the parents. The parents of each child are free to pursue such a laudable goal, but states are not required to expend scarce resources to guarantee that such goals are always achieved. Therefore, although the Institute of Living or another psychiatric hospital might provide the most ideal learning environment for Darlene, the state is not required under the Act to pay the cost of her placement in such an institution.

It is important in this case to recognize that Darlene has not been denied access to the special education and related services provided for in the EHA merely because she has been denied placement at a psychiatric hospital. First, Darlene's parents have been free to convene a new Multidisciplinary Staffing Conference to determine other appropriate placements for Darlene at institutions approved by the SBE and the Governor's Board, but they have chosen instead to pursue this litigation.[5] In addition,

---

5. The plaintiff has in fact failed to avail herself of the appeal procedures available to her as required under § 1415(b) of the act. 20 U.S.C. § 1415. Defendants have argued strenuously that plaintiff's complaint should be dismissed for failure to exhaust the remedies available to

her. However, because it is likely, although far from certain, that appeal of the SBE decision would be futile in light of the Memorandum of Understanding and the rules adopted by the SBE and the Governor's Board, the court has

Darlene's placement at the Institute is not entirely prohibited by the state rules. Although the rules prohibit reimbursement for the cost of her residential placement at the Institute, under the "Home or Hospital Program" established under the rules, the local school district may provide instructional services to hospitalized children and be eligible for reimbursement for such services by the SBE. District 211 personnel have in fact established such a placement for Darlene during the pendency of this action. Thus, alternatives are available to Darlene to obtain a free appropriate education which do not require the state to pay the full cost of a placement at a psychiatric hospital.

Accordingly, the court finds that neither the rules and regulations prohibiting approval of placements in psychiatric hospitals, nor the decision of the state agencies not to approve Darlene's residential placement at a psychiatric hospital, violate any rights Darlene may have under the EHA. She has therefore failed to state a valid claim for relief under the EHA.

### Rehabilitation Act

Plaintiff also alleges that defendants have violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794, by denying her placement at the Institute of Living. Section 504 provides:

> No otherwise qualified handicapped individual in the United States, . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

In support of her claim of violation of § 504, plaintiff points to regulations promulgated under § 504, which require that schools receiving federal funds provide a free appropriate education to handicapped students. 34 C.F.R. § 104.33.

■ The Seventh Circuit has held that the Rehabilitation Act creates substantive rights, and that a private cause of action

exists to enforce those rights. *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir.1977). However, in light of the court's conclusion above that defendants have not violated plaintiff's rights under the EHA, the court declines to hold that § 504 of the Rehabilitation Act, a broad brush statute enacted to prohibit discrimination against the handicapped, imposes a greater duty on states to provide educational services to handicapped than the EHA, an act specifically addressed to special education which explicitly details the educational services states must provide to receive federal funds. Congress could not have intended to impose such a great financial burden on states by the general sweeping language of § 504 without an explicit requirement, *see Board of Education v. Rowley, supra,* and *Pennhurst v. Halderman, supra,* and plaintiff has cited no authority for such a conclusion.

In interpreting § 504, the Supreme Court has indicated that Congress intended § 504 to prohibit only affirmative acts of discrimination against the handicapped. *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). The Court in *Southeastern* found that Congress did not intend § 504 to impose affirmative action obligations on all recipients of federal funds. The Court observed that the language and structure of the act reflect that Congress recognized a distinction between equal treatment of handicapped persons and affirmative efforts to overcome the disabilities of the handicapped, stating that:

> Section 504 does not refer at all to affirmative action . . . A comparison (with other provisions) demonstrates that Congress understood accommodation of the needs of handicapped individuals may require affirmative action and knew how to provide for it in those instances where it wished to do so.

442 U.S. at 411–12, 99 S.Ct. at 2369.

It is therefore doubtful that § 504 can provide a basis for any claim that recipients of federal funds must make affirmative

declined to dismiss the case on this basis and has addressed the merits of plaintiff's claims.

expenditures to comply with § 504. In any event, as discussed above, § 504 certainly cannot impose any greater educational requirements on states than does the EHA. The court therefore finds that plaintiff's claim that defendants violated § 504 by denying her placement at the Institute of Living is without merit.

### Equal Protection and Due Process

Finally, plaintiff alleges in her complaint that denial of state approval of Darlene's placement at the Institute of Living violates her rights to equal protection and due process guaranteed by the Fourteenth Amendment. Little argument was addressed by either party to these claims, and neither claim merits lengthy consideration. With regard to plaintiff's equal protection claim, plaintiff cannot claim that she is a member of a class which has been denied a right provided to other handicapped children, because psychiatric or other medical care is not provided by the state to any handicapped children other than for evaluative and diagnostic purposes. If plaintiff has attempted to state a claim for equal protection based on denial of access to a free appropriate education under the analysis employed in *Mills v. Board of Education,* 348 F.Supp. 866 (D.D.C.1972) or *Pennsylvania Ass'n for Retarded Children v. Pennsylvania,* 334 F.Supp. 1257 (E.D.Pa.1971), it is sufficient to note that these cases involve the right of handicapped children not to be excluded entirely from a public education. They provide no support for a claim that psychiatric care must be provided free to handicapped children to guarantee access to a public education. Plaintiff has failed to cite any authority for such a claim. The court therefore concludes that plaintiff has failed to allege a claim cognizable under the equal protection clause.

With regard to her allegation of violation of the due process clause, the plaintiff makes no claim of denial of procedural due process. As noted above, she has in fact failed to avail herself of the procedures available to her under state rules adopted to comply with the EHA. As to any claim

for violation of substantive due process, plaintiff has not even attempted to assert in her memorandum in opposition to the motion to dismiss that due process guarantees the right to payment for psychiatric treatment. The court finds no support in the law for any such claim. Plaintiff has therefore failed to state a claim upon which relief may be granted under either the equal protection or the due process clauses of the Fourteenth Amendment.

### CONCLUSION

For the foregoing reasons, plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted.