**Cherie PAPACODA, Plaintiff, By Her Next Friend Patricia Conlin**

v.

**STATE of Connecticut, et al.**

**Civ. A. No. H–80–630.**

United States District Court,
D. Connecticut.

May 22, 1981.

James D. Reardon, Gould, Larson, Reardon, Carr & Stanley, Old Saybrook, Conn., for plaintiff.

Thomas N. Sullivan and Lawrence J. Campane, Sullivan, Lettick & Schoen, Albert P. Lenge, Asst. Atty. Gen., Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

Cherie Papacoda, an emotionally disturbed student, seeks a preliminary injunction requiring the defendants to pay the full cost of attendance at the DeSisto School in Stockbridge, Massachusetts, including fees for room and board and for psychotherapy, through June 1982 or her graduation, whichever is earlier.[1] The plaintiff argues that such payments are required by the Education for All Handicapped Children Act, 20 U.S.C. §§ 1401–1420 (1976). It is undisputed that Connecticut receives funds under the Act and is therefore subject to its provisions. Pursuant to the grievance procedure required by section 1415(b)(2), a hearing examiner for the State Department of Education has determined that placement at DeSisto is appropriate and that the defendants should pay "all reasonable educational/instructions costs." The hearing officer found, however, that the placement "is primarily for non-educational reasons" and that the defendants are not responsible "for medical treatment or psychotherapy expenses." The hearing officer's opinion does not state specifically whether the defendants are responsible for the costs of room and board.

The plaintiff has appealed from the hearing officer's decision, as allowed by 20 U.S.C. § 1415(e)(2) (1976):

Any party aggrieved by the findings and decision ... shall have the right to bring a civil action ... in a district court of the United States without regard to the amount in controversy.... [T]he court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

A hearing on an application for a preliminary injunction was held on May 18, 1981. The parties do not challenge the hearing officer's "Findings of Fact" which are part of the record and need not be repeated in detail. The principal points are as follows.

The plaintiff is approximately eighteen years old and has been attending the DeSisto School since March 29, 1980. The need for placement grew out of emotional problems, including self-destructive behavior. The plaintiff's emotional problems are related to family turmoil. During the time she attended public school—until the start of the twelfth grade—her academic performance was at a failing or near-failing level, even though she is of average intelligence according to standardized tests. She was absent from school excessively and seemed to have presented other discipline problems as well. Throughout the time she attended public school, the plaintiff received treatment at various mental health institutions. The plaintiff left the public school at the start of the twelfth grade and entered an in-patient psychiatric program at Yale-New Haven Hospital on November 20, 1979. She was placed at DeSisto after her discharge from Yale-New Haven on the advice of Yale-New Haven treatment personnel who thought she required a structured and therapeutic environment. The defendant school board's planning and placement team subsequently approved the placement after the DeSisto School had been approved by the State Education Department as a special education facility.

Additional evidence offered at the May 18 hearing established the following:

1. The plaintiff receives no financial support from her natural father.

---

1. In considering the plaintiff's motion for a preliminary injunction the court has looked only to prospective relief. The court has not considered any issues relating to the complaint's prayer for retrospective relief and does not express any opinion on these issues at this time. The court has also found it unnecessary at this juncture to consider the claims brought under the federal Constitution and statutes other than the Education for All Handicapped Children Act.

2.  The plaintiff's mother and stepfather have exhausted their financial resources in their attempt to maintain the plaintiff at DeSisto. They have cashed in a retirement account, have used other children's bank accounts and have taken out loans on which they are already in default.

3.  The parties all agree that placement at DeSisto is appropriate because it offers both educational and therapeutic services. The defendants concede that the plaintiff cannot be educated without the provision of therapeutic services.

4.  Prior attempts to educate the plaintiff while she received therapy at a separate institution have been unsuccessful.

5.  The parties agree that placement at DeSisto is appropriate because its program integrates educational and therapeutic programs.

6.  The defendant school board's planning and placement team has approved placement of the plaintiff at DeSisto until her graduation in either February or June 1982.

## Standards for Issuing a Preliminary Injunction

The standard in the Second Circuit for injunctive relief clearly calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979) (per curiam) (footnote omitted).

## The Education for All Handicapped Children Law

In order to qualify for the financial assistance that Connecticut received under the Act, it must maintain "a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1) (1976). The statutory definition of "handicapped children" includes the "seriously emotionally disturbed," *id.* § 1401(1), and it is undisputed that the plaintiff falls within this definition. The definition of "free appropriate education" includes both "special education" and "related services." *Id.* § 1401(18). The definition of "special education" is "specially designed instruction . . . to meet the unique needs of a handicapped child," and specifically includes "instruction in hospitals and institutions." *Id.* § 1401(16). The term "related services" is defined as

> transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education, and includes the early identification and assessment of handicapping conditions in children.

*Id.* § 1401(17).

The regulations promulgated to enforce the Act contemplate that residential placement may be necessary in order to provide "special education" or "related services":

> If placement in a public or private residential program is necessary to provide special education and related services to a handicapped child, the program, including nonmedical care and room and board, must be at no cost to the parents of the child.
>
> *Comment.* This requirement applies to placements which are made by public agencies for educational purposes, and includes placements in State-operated schools for the handicapped, such as a State school for the deaf or blind.

45 C.F.R. § 121a.302 (1980).

The defendants argue that they are not required to pay for the non-educational costs of residential placement, including room and board as well as therapy, when the residential placement is for emotional, rather than for educational, reasons. The defendants also argue that even if they

must pay for room and board, they are not required to pay for therapy. These arguments will be considered in turn.[2]

## A. *Room and Board*

██ The basis of the hearing officer's decision that the defendants need not pay for non-educational expenses was the Connecticut statute implementing the state's program pursuant to the federal Act. The state statute provides:

Any local or regional board of education which provides special education pursuant to any mandates in this section shall provide such transportation, tuition, room and board and other items as are necessary to the provision of such special education except for children who are placed in a residential facility because of the need for services other than educational services, in which case the financial responsibility of the school district and payment to such district shall be limited to the reasonable costs of special education instruction . . .

Conn.Gen.Stat.Ann. § 10–76d(e) (1981 Cum. Supp.).

The hearing officer concluded that residential placement at DeSisto would not be necessary but for the plaintiff's emotional problems. He therefore required that the defendants pay only for the costs of special education.

The denial of payment for room and board because the placement is for "non-educational" reasons conflicts, in this case, with the requirements of federal law. The federal requirement that a state provide special education at no cost to the parent must be interpreted in accordance with the goal of the Act—"to secure by legislation the right to a publicly-supported education for every handicapped child," *Kruelle v. New Castle County · School District,* 642 F.2d 687, 690 (3rd Cir. 1981) (Adams, J.).

The definition of "special education" includes instruction in "hospitals and institutions" if that is necessary to meet the unique needs of the child. The enforcement regulations accordingly provide that room and board must be provided at no cost to the parents if residential placement is necessary for educational purposes. *See supra.* All the parties to this litigation agree that the plaintiff cannot be educated without residential placement because a therapy program must be coordinated with the teaching program. The defendants have therefore oversimplified the situation by analyzing the placement as "non-educational." This case is not simply one in which the plaintiff must be placed in a facility to be treated solely for reasons of health. She must be placed in such a facility because such treatment is necessary in order to render her educable.

Other courts have required room and board payments when residential placement is necessary for a combination of educational and non-educational reasons. One line of analysis is to deem a placement required for educational reasons when the case is so complex that it is not possible to segregate educational from non-educational reasons. *See, e.g., Erdman v. State of Connecticut,* No. H–80–253 (D.Conn. Sept. 16, 1980) (Clarie, C.J.); *North v. District of Columbia Board of Education,* 471 F.Supp. 136, 141 (D.D.C.1979). Other courts have looked directly at whether placement was necessary in order for the child to learn. *See Kruelle v. New Castle County School District,* 642 F.2d 687, 693 (3rd Cir. 1981). The latter approach is appropriate here. In the present case, the need for education in an institution does not arise merely because the plaintiff must be institutionalized for psychiatric reasons so that the educators must come to the hospital in order to reach the student. The very purpose of institutionalization at DeSisto is to provide educa-

---

2. The parties have not challenged the plaintiff's placement at DeSisto as inconsistent with the requirement of 20 U.S.C. § 1412(5)(B) (1976) that "to the maximum extent appropriate, handicapped children . . . [be] educated with children who are not handicapped . . . ." It

seems apparent that no less restrictive alternative to placement at an institution such as DeSisto would be appropriate because only such an institution can provide integrated educational and therapeutic services.

tional services in a therapeutic environment in which they will be effective. The defendants' exercise of hypothesizing that the plaintiff could be educated in any facility if she did not have emotional problems is beside the point. Any handicapped child could be educated as a normal child if he did not suffer from a handicap. The purpose of the Act is to provide education for handicapped children, no matter what the source or severity of their problems. *See* 20 U.S.C. § 1412(2)(C) (1976). The defendants' approach, if adopted, would totally undercut the policy of the Act. Placement in an educational institution designed to educate students with a particular handicap must be recognized as having an educational purpose.

B. *Psychotherapy*

██ The defendants argue that therapy is not a related service because the definition of "related service" excludes medical services that are not diagnostic or evaluative. The defendants offer no support for their position, however, and it is inconsistent with both the plain meaning of the statute and with the one case that has considered the issue. The definition of "related services," quoted previously *supra* at 70, distinguishes between "medical services" and other supportive services including speech pathology and audiology, physical therapy and recreation, as well as psychological services. Only "medical services" are singled out as limited to services for diagnostic and evaluative purposes. This distinction is reflected in the implementing regulations. The regulations define "medical services" as "services provided by a licensed physician to determine a child's medically related handicapping condition which results in the child's need for special education and related services." 45 C.F.R. § 121a.13(b)(4) (1980). The regulation's definition of "psychological services" is not so limited, and includes "Obtaining, integrating, and interpreting information about child behavior" as well as "Planning and managing a program of psychological services." *Id.* § 121a.13(8). Furthermore, the regulation's definition of "related services"

also includes "counseling services," *id.* § 121a.13(a) which is defined as "services provided by qualified social workers, psychologists, guidance counselors, or other qualified personnel." *Id.* § 121a.13(b)(2). There is therefore no question that psychological services that are "required to assist a handicapped child to benefit from special education" are not embraced within the excepted medical services, but are "related services" that must be provided without cost to the parents. 20 U.S.C. § 1401(17) (1976). *Accord, In the Matter of the "A" Family*, 602 P.2d 157, 165 (Mont.1979). *Cf. Rowley v. Board of Education*, 632 F.2d 945, 947–48 (2d Cir. 1980) (per curiam) (Education for All Handicapped Children Act requires provision of sign language interpreter for deaf child when education of that particular child so requires); *Tatro v. Texas*, 625 F.2d 557, 562–64 (5th Cir. 1980) (Act requires payment for catheter when child cannot remain in classroom without it).

### Conclusion

The plaintiff will suffer irreparable injury if removed from DeSisto School because she will be denied her statutory right to education. Without financial assistance, the plaintiff's parents will not be able to maintain her at DeSisto. The plaintiff is likely to succeed on the merits because she is likely to prove that her unique needs require residential placement in an institution that integrates educational with therapeutic services and that federal law requires that these services be provided without cost to the parents.

The defendants are ordered to pay for all costs arising from the plaintiff's attendance at the DeSisto School, including costs for room, board, and therapy, from now until the end of the 1982 term or until the plaintiff is graduated, whichever is sooner.

SO ORDERED.