ALAN TEPLITZ, a Minor, by his Parents and Next Friends, *et al.*, Plaintiffs-Appellants, *v.* MOUNT PROSPECT ELEMENTARY SCHOOL DISTRICT NO. 57 *et al.*, Defendants-Appellees.

First District (4th Division)   No. 82—1794

Opinion filed August 25, 1983.

Wayne B. Giampietro and Kathrin A. Koenig, both of Chicago (DeJong, Poltrock & Giampietro, of counsel), for appellants.

Ancel, Glink, Diamond, Murphy & Cope, of Chicago (Joseph A. Murphy, John B. Murphey, and Peter D. Coblentz, of counsel), for appellee Mt. Prospect Elementary School District No. 57.

Neil F. Hartigan, Attorney General, of Springfield (Georgene M. Wilson, Assistant Attorney General, of counsel), for other appellees.

JUSTICE JOHNSON delivered the opinion of the court:

This appeal arises from an action brought by plaintiffs, Ralph and Roberta Teplitz, parents of Alan Teplitz, a learning disabled child. Plaintiffs sued to review an order of defendant, Joseph Cronin, Illinois State Superintendent of Education, which found that they were not entitled to reimbursement for their expenses in placing Alan in a private school. The sole issue presented for review is whether plaintiffs may recover the cost of placement of their handicapped son in a nonpublic school when defendant local public school district failed to provide an appropriate learning program for him and failed to inform the parents of their right to contest the district's proposed inappropriate placement.

We affirm.

Plaintiff Alan Teplitz (Alan) and his parents, plaintiffs Ralph and Roberta Teplitz, live in Mount Prospect, Illinois, which is within the boundaries of defendant Mount Prospect Elementary School District No. 57 (school district). Alan, born on September 11, 1967, attended the school district's Westbrook Elementary School (Westbrook).

In 1975, Alan was diagnosed as having a learning disability and was placed in a learning disabilities (LD) program which consisted of placement in a self-contained LD room two or three times a week for approximately one-half hour per session. A school district staff recommendation report, dated September 5, 1975, noted that Alan's academic progress was depressed, that he had audio-visual perceptual difficulties, and motor problems as well as "some emotional overlay."

The report also recommended counseling for the parents.

The Templitzes attended staffing conferences on October 25, 1975, January 26, 1977, and May 23, 1977, to evaluate Alan's performance. At the 1976 conference, it was noted that there was little or no carry-over of progress from Alan's LD resource room to the regular classroom. At the January 1977 conference, the following was reported: alternate programs for Alan were discussed; Alan seemed to be making some academic progress despite apparent strange behavior in the classroom and lack of progress in day-to-day studies; there had been a change in medication in order to change Alan's classroom performance; Alan would continue in the LD program until the end of the school year, and the family agreed to explore further counseling.

At the May 1977 conference, it was reported that the Teplitz family had sought counseling and that Alan had seen a counselor on a limited basis. Alan was transferred to another homeroom in the hope that a change in environment might improve his interest and progress. The school staff received a report from a neurologist recommending that Alan be placed in a LD classroom which was highly structured and quiet. The consensus was that Alan could not adequately perform in a normal classroom, although test results showed him only slightly below normal grade level. Alan's teachers reported that his greatest problem was his inability to help himself and his general inattentiveness. The report stated that "Mrs. Gundersen will explore the possibilities of a placement in a self-contained learning disability program, possibly at Euclid School, Summit, \*\*\*, and will report to the parents sometime in the near future." Finally, it was recommended that the family continue in the counseling program and explore the possibility of a more sustained program for Alan. At the end of the report was the statement, "The parental right to review this placement decision will be honored upon request."

The Teplitzes claimed that despite repeated attempts over the summer of 1977 to learn what arrangement had been made for Alan for the next school year, they were never advised of any possible alternative placement or of the institution of a program designed to meet Alan's educational and psychological needs. When the 1977-78 school year began, no program had been suggested for Alan. Plaintiffs then enrolled Alan at Cove School in Evanston, Illinois, a non-public school for children with learning disabilities.

The principal of Westbrook contacted the Teplitzes when Alan did not return to that school on August 30, 1977. A conference was arranged in September 1977 which was attended by the Teplitzes, John Gatto, Westbrook's principal, Dr. A. R. Yeslin, school psychologist and

Shirley Gundersen, coordinator of special services. The staff suggested that Alan be tutored for an hour a day until he could be placed in a self-contained LD classroom in eight or nine weeks. In August 1977, the school staff had rechecked on the availability of a placement for Alan but had received no firm commitment. The Summit school district reported that a placement might be available in eight or nine weeks. The Teplitzes stated that they are unwilling to remove Alan from the Cove School.

On October 3, 1977, Earl Sutter, superintendent of the school district, informed the Teplitzes by letter that Westbrook was the most appropriate placement for Alan and that Cove School was more restrictive than was warranted by circumstances. He informed the Teplitzes of their right to file an objection in writing to the proposed placement. In a letter dated October 13, 1977, the Teplitzes informed the superintendent of their objection and requested a hearing by an impartial hearing officer.

On November 21, 1977, Richard Aronoff, an impartial hearing officer, convened a due process hearing under article 10 of the Illinois Rules and Regulations to Govern the Administration and Operation of Special Education. Persons in attendance included Earl Sutter, superintendent of district 57, Shirley Gundersen, coordinator of special services for the district, Arthur Yeslin, psychologist, John Gatto, principal of Westbrook, Carlene Heiden, Westbrook classroom teacher, Yvonne Amber, Westbrook LD teacher, Mr. and Mrs. Teplitz, and Dan Tokarski, principal of Cove School.

The hearing officer made the following findings of fact. Alan needed significant special education intervention and should be placed in a highly structured small classroom. Alan's rights were not fully observed because his parents were not notified in writing at least 10 days in advance of the district's proposed placement and were not notified of the district's inability to provide recommended services. The hearing officer recommended that Alan be placed in a self-contained LD class in a public school for at least 50% of the school day, that one hour per week of social work or an additional therapeutic program be offered to Alan and his family, and that the district provide additional diagnostic evaluation by a multidisciplinary staff for more specific delineation of Alan's needs. The hearing officer reasoned that private placement was not justified because the public schools were required to provide the type of placement he recommended for Alan.

On December 19, 1977, Shirley Gundersen informed the Teplitzes of the school district's plan to implement the recommendations of the hearing officer, but on January 13, 1978, the Teplitzes notified the dis-

trict of their intent to appeal.

On June 15, 1978, the State Superintendent of Education issued an interlocutory order in which he found himself unable to determine whether Alan's rights had been observed. He ordered the school district to conduct a full case study of Alan's needs and to submit an individualized education plan. Alan was found ineligible for private placement because "his exceptional characteristics are not so profound, complex, and unique that no public school program can adequately and appropriately meet his needs ***."

District superintendent Sutter informed the Teplitzes of his intent to implement the interlocutory order, and on July 18, 1978, a staffing conference was held which the Teplitzes attended as observers. The Teplitzes were informed that, under the superintendent's order, if they continued to enroll Alan at Cove, it would be at their own expense.

On August 10, 1978, the Teplitzes wrote a letter to Superintendent Cronin asking for reimbursement for tuition at Cove. On October 25, 1978, Cronin issued an administrative order in which he found that the district had completed an appropriate case study evaluation and had developed an individualized education plan for Alan. He also found that Alan's rights had not been observed for 1977 to 1978 and that the school district had offered Alan an inappropriate placement not directly related to his needs. Cronin sustained the district's decision that Alan was ineligible for placement in a nonpublic facility. He ordered the district to place Alan in a self-contained LD classroom for the 1978 to 1979 school year and to provide evidence on whether the Teplitzes were provided with timely notice of their right to appeal Alan's placement for the 1977 to 1978 school year. Again, the district superintendent informed the Teplitzes of his intent to implement the administrative order.

On March 29, 1979, Cronin issued a supplemental order which found that district 57 failed to timely notify the Templitzes of their right to a due process hearing and that this failure caused an unwarranted financial burden to fall on the Teplitzes. Cronin concluded that the remedy for a failure to timely notify would be direct appeal to the State Superintendent of Education. However, the Teplitzes could not be awarded retroactive reimbursement for tuition at Cove School for 1977 to 1978 because it would be "tantamount to a penalty or money damages. The State Superintendent of Education is not authorized to enforce a penalty or award money damages under these circumstances, thus an administrative appeal cannot resolve this issue."

On May 4, 1979, the Teplitzes filed a complaint under the Admin-

istrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) to review the March 29, 1979 order. On June 18, 1982, the circuit court confirmed the order. Plaintiffs appeal.

At issue in this case is whether plaintiffs may recover the cost of placing their learning disabled child in a nonpublic school where the school district failed to provide an appropriate learning program and failed to inform the parents of their right to contest the district's proposed inappropriate placement. Plaintiffs argue that Alan's right to a free appropriate education is guaranteed by the education article of the Illinois Constitution and the School Code. His procedural rights are based on both Federal and State laws. According to plaintiffs, they are entitled to reimbursement because of Superintendent Cronin's findings that the school district breached its duty to timely notify them and this failure of notice caused an unwarranted financial burden to fall upon them. Plaintiffs had no choice but to place Alan in a school that would meet his needs.

Plaintiffs further contend that Superintendent Cronin misconstrued the School Code in holding that he had no authority to order retroactive reimbursement. The State Board of Education has wide discretion in formulating sanctions or remedies to deal with unlawful practices committed by the school district. The circuit court was not bound by the superintendent's interpretation of the School Code. Limiting the remedy for a violation of due process rights to an administrative appeal leave plaintiffs with no remedy for that violation because the superintendent concluded that he was not authorized to award retroactive reimbursement even if plaintiffs had appealed. Finally, plaintiffs contend that the school district's breach of its duty to provide an appropriate education and a due process hearing shows bad faith and thus they are entitled to reimbursement under *In re Special Education Placement of Walker* (1982), 107 Ill. App. 3d 1053, 438 N.E.2d 582.

The education article of the Illinois Constitution provides that "[a] fundamental goal of the People of the State is the educational development of all persons to the limits of their capacities. *** Education in public schools through the secondary level shall be free." (Ill. Const. 1970, art. X, sec. 1.) In *Elliot v. Board of Education* (1978), 64 Ill. App. 3d 229, 237, 380 N.E.2d 1137, 1143, the appellate court interpreted this provision of the Constitution, together with the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 14—1.01 *et seq.*) and rules and regulations of the Illinois Office of Education (Rules and Regulations to Govern the Administration and Operation of Special Education, effective August 23, 1976) to mean that the education of handicapped

students is part of the responsibility of the public school system and must be free of tuition charges through the secondary level. See *Board of Education v. Rowley* (1982), 458 U.S. 176, 73 L. Ed. 2d 690, 102 S. Ct. 3034 (discussion of Federal aid to State special education programs).

In *In re Special Education Placement of Walker* (1982), 107 Ill. App. 3d 1053, 438 N.E.2d 582, the appellate court addressed the issue of whether a parent could be reimbursed for expenses in unilaterally placing a child in a nonpublic school. The court relied on *Anderson v. Thompson* (7th Cir. 1981), 658 F.2d 1205, 1213-14, which described two circumstances justifying such an award: (1) where a child's health would have been endangered had the parents not made alternative arrangements to those offered by the school system and (2) where the defendant had acted in bad faith by failing to comply with statutory procedural provisions in an egregious fashion.

Both requirements were met in *In re Special Education Placement of Walker*. Plaintiff, Mrs. Walker, unilaterally placed her son in a nonpublic facility the day after an incident of physical violence by him, and the school district showed bad faith by ignoring plaintiff's repeated requests for a due process hearing over a five-month period. The school district did not initially inform Mrs. Walker of her right to a due process hearing, and the hearing was not held until after her fourth request.

In the instant case, the requirements of *Anderson v. Thompson* have not been met. Plaintiffs have not demonstrated that Alan's health would have been endangered had he not been placed in the Cove School. We cannot infer bad faith merely from the school district's failure to inform the Teplitzes of their procedural rights. In *In re Special Education Placement of Walker*, plaintiff made repeated requests for a hearing before it was granted. In the instant case, plaintiffs were granted a hearing upon their first request. The school district's initial failure to comply with procedural provisions was not so egregious as to justify reimbursement for the Teplitzes' unilateral placement of Alan in the Cove School.

The instant case is also distinguishable from *In re Special Education Placement of Walker* insofar as in *Walker* the hearing officer found appropriate the type of placement which was unilaterally made by Mrs. Walker. In the instant case, the hearing officer did not recommend a full-time placement in a self-contained LD class, but a half-time placement. Thus, he did not find that the Cove School was the appropriate placement for Alan. In fact, the hearing officer stated that private placement was not justified because the public schools

were required to provide the type of placement he recommended for Alan. Therefore, we hold that plaintiffs are not entitled to reimbursement for their expenses in unilaterally placing their learning disabled child in a nonpublic school.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

ROMITI, P.J., and JIGANTI, J., concur.