**MAX M., and his parents, Mr. & Mrs. M., Plaintiffs,**

**v.**

**James R. THOMPSON, et al., Defendants.**

**No. 82 C 6575.**

United States District Court, N.D. Illinois, E.D.

Aug. 13, 1984.

Matthew D. Cohen, Canel, Aronson & Whitted, Chicago, Ill., for plaintiffs.

Ralph Miller, John Collins, Brydges, Riseborough, Morris, Franke & Miller, Paul Millichap, Asst. Attys. Gen., State of Ill., John A. Relias, M. Morrison Torrey, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

### ORDER

BUA, District Judge.

This order concerns the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, both motions are denied.

## I. BACKGROUND

The plaintiffs' initial complaint stated claims which, although based on various federal and state statutory and constitutional provisions, were primarily derived from the Education for All Handicapped Children Act (EAHCA).[1] 20 U.S.C. § 1401 et seq. (1976). The EAHCA is a federal funding statute under which participating states receive federal funds to assist in providing educational and other related services to handicapped children. Any State educational agency receiving funds under the EAHCA must establish procedures whereby handicapped children and their parents may protect their rights to a "free and appropriate public education." 20 U.S.C. § 1415(a) (1976).

The plaintiffs are Max M., a handicapped child within the meaning of the EAHCA,[2] and his parents. The parties named as defendants in the original complaint were designated as the "State Defendants," the "Intermediate Defendants," and the "Local Defendants." The State Defendants included: (1) James R. Thompson, Governor of Illinois; (2) the Illinois State Board of Education (ISBE); (3) Donald Gill, the Illinois Superintendent of Education; and (4) Edward Copeland, the Chairperson of the Illinois State Board of Education. The Local Defendants were: (1) New Trier High School District # 203 (District # 203); (2) the New Trier District # 203 Board of Education; (3) Ronald Bickert, Superintendent of Schools in District # 203, and (4) James Walter, Director of Special Education for District # 203. The final group of defendants, the Intermediate Defendants, included: (1) the North Suburban Special Education District (NSSED); and (2) Stanley Bristol, Superintendent of the NSSED.

The relevant facts taken from the complaint and exhibits thereto have been set forth in this Court's published order of July 1, 1983, *Max M. v. Thompson*, 566 F.Supp. 1330, 1338 (N.D.Ill.1983) (*Max M. I*) and are briefly recapitulated here. Max M. attended New Trier West, a public high school in Northfield, Illinois, from 1977 to 1981. Because of his disorganization, difficulty in writing, and anxiety, his academic performance was poor. During his freshman year, Max was referred to the District No. 203 Department of Special Education for evaluation. Intensive psychotherapy was recommended, but District 203 made no offer to provide the service at that time. The following summer, Max' parents formally requested District 203 to provide the recommended therapy during Max' sophomore year. District 203 developed an "individualized education plan" ("IEP") pursu-

---

[1] Plaintiffs originally brought claims under the EAHCA, 20 U.S.C. § 1401 *et seq.;* § 504 of the Rehabilitation Act, 29 U.S.C. § 794; 42 U.S.C. § 1983; the due process and equal protection clauses of the fourteenth amendment; the Illinois School Code, Ill.Rev.Stat. ch. 122, ¶¶ 14–1.01 *et seq.;* and the Illinois Constitution, Art. I, § 2, Art. X, § 1.

[2] The term "handicapped children" in the context of the EAHCA includes "seriously emotionally disturbed children … or children with specific learning disabilities, who by reason thereof require special education and related services." 20 U.S.C. § 1401(1) (1976).

ant to the EAHCA for Max during his sophomore year, but the IEP did not include therapy. Max' condition worsened during his sophomore, junior, and senior years in high school. In the IEPs developed for each academic year, no provision was ever made for District 203 to provide intensive psychotherapy. Max' parents did not participate in the development of any of these IEPs. Ultimately, Max' parents themselves obtained private psychiatric treatment for Max at a cost to them of $8,855.

On May 15, 1981, District 203 notified Mr. and Mrs. M. of its decision to issue Max a high school diploma. Under the EAHCA, a handicapped child in Illinois becomes ineligible for continued benefits upon graduation. On May 21, 1981, Mr. and Mrs. M. requested a due process hearing, alleging violations of Max' right to a free appropriate public education. Subsequently, District 203 issued Max a diploma. On October 13, 1981, a state appointed hearing officer conducted a hearing, and ordered the diploma revoked, with services to continue based upon a new IEP. District 203 appealed the ruling to the Illinois State Board of Education, which, on February 19, 1982, reversed the decision of the hearing officer. Plaintiffs' complaint challenged this ruling on several grounds. This Court dismissed all claims against all defendants except for plaintiffs' claim against the Local Defendants under § 1415(e)(2) of the EAHCA for reimbursement of the $8,855 expended by Mr. and Mrs. M. for Max' psychiatric treatment. *Max M. I,* 566 F.Supp. at 1340.

In light of intervening Seventh Circuit precedent, the plaintiffs motioned for reconsideration of two of the previously dismissed claims. Basing their motion on the recent decision in *Timms v. Metropolitan School District of Wabash County, Ind.,* 722 F.2d 1310 (7th Cir.1983), the plaintiffs sought: (1) compensatory remedial educational services to compensate Max M. for the deprivation of EAHCA benefits while he was in high school (related to this claim, plaintiffs requested an injunction to rescind Max' high school diploma in order to rees-

tablish Max' eligibility under the EAHCA); and, (2) injunctive relief prohibiting the Illinois State Board of Education employees from serving as members of the State Review Panel, thereby insuring impartial review.

On April 4, 1984, this Court ordered that the plaintiffs' claim for compensatory remedial educational services under EAHCA be reinstated against the State, Local and Intermediate Defendants. *Max M. v. Thompson,* 585 F.Supp. 317 (N.D.Ill.1984) (*Max M. II*). The plaintiffs' prayer for an injunction to revoke Max' diploma was also reinstated. *Id.* at 15. However, the plaintiffs' claim for injunctive relief with respect to the appointment of State employees to the State Review Panel was denied and remained dismissed as to all defendants. *Id.* at 16. The motions presently before the Court, however, are only concerned with the plaintiffs' claim against the Local Defendants under § 1415(e)(2) of the EAHCA for reimbursement of the $8,855 expended by Max' parents for Max' psychiatric treatment.

## II. THE ISSUES

■ Three basic issues are raised in the parties' cross-motions for summary judgment: Whether psychiatric services are required to be provided as a related service under § 1401(17) of the EAHCA; whether the Local Defendants have failed to comply with the procedural safeguards required under § 1415 of the EAHCA; and, if a failure to comply with the procedural safeguards has occurred, whether the failure was in an egregious fashion leading to the conclusion that the defendants acted in bad faith. Although the plaintiffs do raise an issue as to the availability of damages for the cost of Max' private psychotherapy under state regulations, this Court has already dismissed similar state law arguments asserted by the plaintiffs in *Max M. I,* 566 F.Supp. at 1338. Responding to the argument in *Max M. I* that Illinois law allowed an action for damages even if the EAHCA did not, this Court interpreted Ill.

Rev.Stat. ch. 122, § 14–1.01 *et seq.* as follows:

> The state act's language, while not duplicating the language of the EAHCA verbatim, parallels the EAHCA in substance. As with the EAHCA, the state act's concern appears to be ensuring proper educational placement for handicapped children. Absent a persuasive argument to the contrary, it must be assumed that § 14 of the Illinois School Code, a mere creature of the EAHCA, is a reflection of the EAHCA on the state level. As such, it can confer no more rights than can the EAHCA itself. Since damages are allowed only in limited form under the EAHCA, this Court does not believe that expanded monetary relief is provided by § 14 of the Illinois School Code. *Max M. I,* 566 F.Supp. at 1338.

In their present argument, the plaintiffs cite various sections of the Rules and Regulations to Govern the Administration and Operation of Special Education, Ill.Admin. Reg.Vol. 3, Issue 5 (Feb. 2, 1979) in an attempt to establish that psychiatric services are required under state regulations if not under the EAHCA. Specifically, plaintiffs contend that provisions found in State Rule 5.10(3) and 5.01(6)(a) mandate the availability of psychiatric services for handicapped children in Illinois. Yet, this Court is of the opinion that the state regulations enacted pursuant to the EAHCA do not confer greater rights to therapeutic services than those mandated directly by the EAHCA. Nothing in the state regulations unequivocally provides for psychiatric therapy. As no greater rights to psychiatric therapy are conferred by the state regulations, this Court dismisses the plaintiffs' arguments for independent summary judgment under the state regulations as duplicative.

Defendants, on the other hand, argue that the 1980 revisions of the state regulations expressly disavow a school district's responsibility to provide the therapeutic services Max privately received. *See,* Emergency Rules and Regulations to Govern the Administration and Operation of Special Education, Ill.Admin.Reg.Vol. 4, Issue 39 (Sept. 26, 1980). However, state laws, regulations, or procedures cannot conflict with the provisions of the EAHCA. *Monahan v. Nebraska,* 491 F.Supp. 1074 (D.C.Neb.1980). Thus, irrespective of the defendants' interpretation of the 1980 regulations, the state regulations as a matter of law cannot limit the defendants' responsibility to provide services required by the EAHCA. Accordingly, the Court dismisses the arguments of the defendants concerning the application of the state regulations to this issue and the Court proceeds to the issues raised directly under the EAHCA.

### A. *The Psychiatric Services Issue*

A motion for summary judgment may only be granted when a moving party establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *County of Milwaukee v. Northrup Data Systems,* 602 F.2d 767, 774 (7th Cir.1979). In the present case, both sides agree that among the related services specified in § 1401(17) of the EAHCA,[3] psychological services, including psychotherapy, are to be made available to handicapped children identified as requiring such services.[4] The dispute between the sides arises over the question of whether psychotherapy rendered by a psychiatrist is a required related service under § 1401(17). Since no issue of material fact is presented in this question, summary judgment is appropriate.

---

**3.** Related services is defined by the EAHCA as meaning, "transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education, and includes the early identification and assessment of handicapping conditions in children." 20 U.S.C. § 1401(17) (1976).

**4.** *See* 20 U.S.C. § 1412(2)(C) (1976) and § 1414(a)(1)(A) (1976).

The plaintiffs argue that the psychotherapy Max received is mandated by § 1401(17) of the EAHCA through the provision for psychological and counseling services. The fact that a psychiatrist, a licensed physician, conducts the psychotherapy, the plaintiffs argue, does not convert the therapy into a medical service. Rather, the plaintiffs contend that the fact a psychiatrist rendered the psychotherapy has no impact on the required nature of the service under the EAHCA.

The plaintiffs, attempting to support their contention that psychiatric psychotherapy is a related service, point to a number of decisions which have addressed the scope of psychological and counseling services required in § 1401(17). However, none of the cases cited by the plaintiffs squarely address the issue of psychiatric psychotherapy as a related service.

In *Papacoda v. State of Connecticut,* 528 F.Supp. 68, 72 (D.Conn.1981), the court issued a preliminary injunction requiring the State to pay the cost of psychotherapy received by a severely emotionally handicapped child. The Court stated that "psychological services that are required to assist a handicapped child to benefit from special education are not embraced within the excepted medical services, but are related services that must be provided without cost to parents." *Id.* at 72. Yet, *Papacoda* merely stands for the proposition that psychotherapy is a related service under § 1401(17) of the EAHCA. The decision does not reach the issue of psychiatrically administered psychotherapy. Similarly, *Gary B. v. Cronin,* 542 F.Supp. 102 (N.D.Ill.1980) and *In the Matter of "A" Family,* 184 Mont. 145, 602 P.2d 157 (1979), do not address the issue of psychiatric psychotherapy under the EAHCA, but only hold that psychotherapy is a related service. *Cronin,* 542 F.Supp. at 117. *In the*

*Matter of "A" Family,* 602 P.2d at 157. Thus, none of the cited cases control the issue before the Court.

Defendants take the position that any service rendered by a psychiatrist is a medical service under § 1401(17). They argue that because a psychiatrist is a licensed physician and medical services under the EAHCA are described in the Code of Federal Regulations as those services provided by a licensed physician,[5] any service by a psychiatrist will not be included as a required service unless it is limited to diagnosis or evaluation.[6] The defendants therefore contend that the plaintiffs are not entitled to any reimbursement for the cost of the psychotherapy Max received from his psychiatrist, Dr. Rosenfeld. Citing 34 C.F.R. § 300.13(b)(2) (1983),[7] the defendants argue that only psychotherapy performed by qualified psychologists, not psychiatrists, is mandated by § 1401(17) of the EAHCA. Thus, since the plaintiffs chose to receive psychotherapy through a psychiatrist, rather than a psychologist, the defendants contend that the plaintiffs are not entitled to reimbursement for the costs of Max' therapy.

The defendants cite two district court decisions to support their position that psychiatric psychotherapy is not a related service under the EAHCA. In *McKenzie v. Jefferson,* 566 F.Supp. 404 (D.D.C.1983), the court held that the EAHCA did not encompass inpatient and outpatient hospitalization expenses for an emotionally disturbed student who was placed by her parents at a residential facility. *Id.* at 413. The court based its ruling on the determination that the child's hospitalization was primarily for medical and not educational reasons and that the limitation on medical services in § 1401(17) precluded the plaintiffs from recovering hospitalization costs beyond diagnosis and evaluation. *Id.* at

---

5. *See* 34 C.F.R. 300.13(b)(4) (1983).

6. The defendants argue that the exclusion of medical services under EAHCA, with the exception of those needed for evaluative or diagnostic purposes, applies to any services rendered by any licensed physician, including a psychiatrist.

7. 34 C.F.R. 300.13(b)(2) (1983) defines "Counseling services" as "services provided by qualified social workers, psychologists, guidance counselors, or other qualified personnel."

412, 413. Yet, the determination in *McKenzie* that hospitalization costs incurred by a handicapped child for primarily medical and not educational reasons are not covered under § 1401(17) is not dispositive of the question before this Court. *McKenzie* does not address the question of whether psychiatric psychotherapy deemed necessary for primarily educational reasons is required as a related service under the EAHCA. In the case at bar, neither party disputes the fact psychotherapy was recommended for Max to enhance his scholastic performance. Rather, the dispute lies in who may render the psychotherapy within the EAHCA provisions. Thus, *McKenzie* does not control the issue before this Court.

Defendants also cite the recent decision of *Darlene L. v. Illinois State Board of Education*, 568 F.Supp. 1340 (N.D.Ill.1983). In *Darlene L.*, an emotionally handicapped child sought to compel state and local school authorities to assume the cost of her residential placement in a psychiatric hospital.[8] *Id.* at 1342. Denying the plaintiffs' claim, the court found that psychiatric hospitalization services are properly classified under § 1407(17), as medical services and therefore need only be provided by the defendants for evaluative and diagnostic purposes. *Id.* at 1344. In making this determination, the court in *Darlene L.* expressed its concern over the financial ramifications of requiring state educational authorities to provide psychiatric care to handicapped children. Moreover, the court reasoned that the EAHCA does not require the states to maximize the potential of each handicapped child by providing the most appropriate educational services. *Id.* at 1344. Rather, the court concluded that the EAHCA only requires that an appropriate learning environment be provided. *Id.* at 1344. Thus, the court held that although the plaintiff's placement in the psychiatric hospital might have provided the most ideal learning environment, the state was not compelled to assume the cost of her stay in the institution. *Id.* at 1344.

This Court agrees that the EAHCA's related services provision was not intended by Congress to be expansively interpreted so as to "impose upon the states a burden of unspecified proportions and weight." *Board of Education v. Rowley*, 458 U.S. 176, 190 n. 11, 102 S.Ct. 3034, 3042 n. 11, 73 L.Ed.2d 690 (1982). Interpreting the related services provision to include all psychiatric services appropriate for the education of emotionally handicapped students would divert the limited funds available for special education to a relatively small number of handicapped children without any indication that Congress intended such a result. *Darlene L.*, 568 F.Supp. at 1345. The basic purpose of the EAHCA requiring related services is to "assure all handicapped children the right to a free and appropriate education." 20 U.S.C. 1412(1) (1976). The EAHCA, however, does not require states to maximize the potential of each handicapped student by providing the most appropriate public education. *Rowley*, 458 U.S. at 200, 102 S.Ct. at 3047; *Darlene L.*, 568 F.Supp. at 1345.

In defining the scope of related services, Congress attempted to set limitations beyond which services possibly related to the education of a handicapped child would not be provided at the public's expense. Health care services appear to be one of the areas limited by Congress. Specifically, health care services characterized as medical services are excluded under the statute except for diagnostic or evaluative purposes. 20 U.S.C. 1401(17) (1976). Medical services are defined as services provided by a licensed physician. 34 C.F.R. § 300.13(b)(4) (1983). However, it is clear that some health care services are required as related services under the EAHCA. *Tokarcik Forest Hills School District*, 665 F.2d 443 (3rd Cir.1981); *Tatro v. Texas*, 625 F.2d 557 (5th Cir.1980).

---

**8.** The defendants in *Darlene L.* included the Illinois State Board of Education, the Governor's Purchased Case Review Board, the Board of Education of Township High School District

211, the Northwest Suburban Special Education Organization, and "various others." *Darlene L. v. Illinois State Board of Education*, 568 F.Supp. 1340, 1342 (N.D.Ill.1983).

Apparently, a distinction lies in who is to perform the related services: a licensed physician or a nonphysician, such as a school nurse. *See McKenzie v. Jefferson*, 566 F.Supp. at 407. This distinction between who is to provide the related service is significant for two reasons. First, by assuring that health services be provided by nonphysicians wherever possible, costs are contained. Second, routine health care procedures which can be provided by either a physician or nonphysician are separated from those procedures requiring a physician. Thus, related services under the EAHCA with respect to medical services do not include only those services a licensed physician can provide beyond those for diagnostic and evaluative purposes. However, EAHCA related services may include health care services that someone other than a licensed physician could provide.

■ Clearly, most health care services from bandaging a finger to conducting physical therapy could be provided by both a physician or nonphysician. The simple fact that a service *could be* or *actually is* rendered by a physician rather than a nonphysician does not dictate its removal from the list of required services under EAHCA. The mere accident that a physician happened to perform the service should not make any difference with respect to the mandatory nature of the service itself.

■ A school district is only required to provide the minimum level of health care personnel recognized as legally and professionally competent to perform a related service. 34 C.F.R. § 300.13, *Comment* (1983). In a situation where a school district has failed to provide services required under the EAHCA and failed to properly inform the deprived EAHCA recipients of their right to seek review, a school board can be held liable for the cost of privately obtained services subject to certain limitations. Specifically, the school board can be held liable for no more than the cost of the service as provided by the minimum level health care personnel recognized as competent to perform the related service. Thus, if the deprived party chooses to have a

physician dress a cut which a school nurse could have competently dressed, the party is entitled to recover only the amount that it would have cost for the nurse to perform this service. This concept is a familiar one which is no different from those used in most medical insurance programs to limit costs. Surely, this was the approach which Congress intended. Not only are expenditures limited and costs contained, but services required under the statute are assured to handicapped children irrespective of the service provider.

■ The defendants, however, read 34 C.F.R. § 300.13(b)(4) to actually require that a physician not provide health care services beyond diagnosis and evaluation. Under this reading, once a physician performs the treatment, it is no longer a required related service. Such an interpretation leads to the conclusion that the bandaging of a finger may be required if a school nurse does the bandaging, but is not required if a physician performs the service. In the context of a suit for reimbursement to parents who independently obtained a required service under the EAHCA in the face of the school's refusal to do so, the school would argue that it would be required to pay the parents if they went to a nurse, but would owe nothing if a physician happened to be used. This Court is of the opinion that Congress could not have intended this unfair and illogical result. The restrictions imposed by Congress in § 1401(17) were intended to limit the *nature* of the services required rather than the *personnel* who may provide the service.

■ In the context of our case, it is clear that the EAHCA requires psychological services which include counseling and testing. 34 C.F.R. § 300.13(A)(b)(8) (1983). Psychotherapy also appears to be a required related service. *Gary B.*, 542 F.Supp. at 102; *Papacoda*, 528 F.Supp. at 68; *In the Matter of "A" Family*, 602 P.2d at 157. These related services presumably may be rendered by social workers, psychologists, or guidance counselors, 34 C.F.R. 300.13 *Comment* (1983). Accord-

ingly, the EAHCA requires that the school district provide cost-free psychotherapy that could be carried out by psychologists, social workers, or guidance counselors.

 This Court agrees that services that can only be provided by a psychiatrist are properly classified as medical services under § 1401(17) and need only be provided for diagnostic and evaluative purposes. *Darlene L.*, 568 F.Supp. at 1345. However, psychotherapy and similar psychological services that other professionals can provide are required under § 1401(17) and do not become nonreimbursable by virtue of their being performed by a psychiatrist. The psychotherapy recommended for Max by the defendants and paid for by the plaintiffs was a required service under § 1401(17). Thus, if the plaintiffs succeed in showing a bad faith noncompliance with the EAHCA's procedural safeguards by the defendants, the plaintiffs will be entitled to reimbursement for Max' psychotherapy up to an amount equal to the cost of providing the same level of treatment by a qualified social worker, psychologist or guidance counselor. The liability of the defendants in such case is to be computed from the amount that these qualified personnel would normally and reasonably charge for the psychotherapy Max received. If the plaintiffs are not fully reimbursed, then the portion of cost the plaintiffs must incur is the cost of exercising their freedom to select special care.

The approach taken by this Court will require the plaintiffs to present proof of their expenditures for Max' psychotherapy and the defendants to provide estimates of the cost of having qualified school personnel render such psychotherapy. Although this approach may be more cumbersome than those advocated by the parties, this approach is no more time consuming than the computation of damages in many cases. Most importantly, however, the approach taken today seems mandated by the EAHCA because it properly limits expenditures for medical treatments but insures the provision of required services for the handicapped.

## B. *The Procedural Violations Issue*

 State and local educational agencies are required by § 1415 of the EAHCA to establish and maintain certain specified procedural safeguards to assure parents that their handicapped children obtain a free and appropriate education. These safeguards include, *inter alia*, the opportunity to examine all relevant records concerning the evaluation and placement of the child, the opportunity to obtain an independent educational evaluation of the child, written prior notice of any proposals or refusals to initiate or change the child's evaluation or educational placement, an opportunity to present complaints on any relevant matter, and the opportunity for an impartial due process hearing with respect to any complaint lodged by the parents. 20 U.S.C. § 1415(b)(1) (1976). Furthermore, the state and local agencies must assure that the parents are fully informed of all these procedural safeguards. 20 U.S.C. § 1415(b)(1) (1976).

Local educational agencies under 34 C.F.R. § 300.340 (1983), are required to develop an individualized educational program (IEP) for each handicapped child. The local educational agency must assure that one or both of the child's parents attend a meeting for the purpose of developing, reviewing and revising the IEP. 34 C.F.R. §§ 300.343, 300.345 (1983). The steps a local educational agency must take to insure the presence of the parents include notification of the time, purpose, and location of each meeting, as well as any action necessary to insure the parents understand the proceedings at each meeting. 34 C.F.R. § 300.345 (1983). Any time a local educational agency proposes or refuses to initiate or change the identification, evaluation, or educational placement of the child, the agency must provide prior written notice to the parents. 34 C.F.R. § 504. Parental consent must be obtained before conducting a preplacement evaluation or initial placement of the child in a program providing special education and related services. 34 C.F.R. § 300.504 (1983). The notice required by § 300.504 must include a

full explanation of all the procedural safeguards available to the parents, a description of the action proposed or refused and the reasons therefore, and a description of any options the agency considered and the reasons why those options were rejected. 34 C.F.R. §§ 300.505(a) (1983). Furthermore, the notice must be written and in language understandable to the general public. 34 C.F.R. § 300.505(b) (1983).

Plaintiffs contend, first, that the defendants failed to comply with the aforementioned procedures, and second, that these failures were so egregious as to amount to bad faith on the part of the defendants. The plaintiffs point specifically to the defendants' failure to inform Mr. and Mrs. M. of their procedural rights and failure in not allowing parental participation in planning conferences concerning Max. Based on the affidavits, exhibits and relevant portions of the administrative record that the parties have brought to the Court's attention, the plaintiffs must prevail on this issue.

In January of Max' freshman year his poor grades alerted school officials to a potential problem. Representatives of defendant District 203 met with Mr. and Mrs. M., suggested outside therapy, and raised the possibility of special education courses as a short-term measure. The parties also arranged for Max to undergo a psychological evaluation by the school psychologist in February. The evaluation characterized Max as an unusually "anxiety-ridden teenager," and unequivocally recommended long-term intensive psychotherapy.

As early as January and February, 1978, during Max' freshman year, representatives of District 203 failed to comply with the procedural regulations of the EAHCA. The evaluation by the school psychologist was clearly the initiation of "identification" or "evaluation" of Max under 34 C.F.R. § 300.504 (1983). Such an act by District 203 required prior written notice to the parents containing, among other things, a full explanation of all the procedural safeguards available to the parents. 34 C.F.R. § 504 (1983). District 203 did send Mr. and Mrs. M. a letter in January apprising them of the results of a meeting by the District's Special Education Committee at which the committee recommended special education courses for Max and suggested a psychological evaluation. However, the letter made no mention of any procedural rights. Later in April, 1978, District 203 wrote the Ms to confirm Max' placement in a special education math class, but again, no mention was made of any of the Ms' procedural rights. These are the only written communications between District 203 and the Ms during Max' freshman year produced by either party.

In Max' sophomore year in November, 1978, on "upperclass parents' night," District 203 stated that it shared with the Ms the IEP it had prepared for Max' sophomore year. However, Mrs. M's affidavit states that she did not participate in the writing of the 1979–80 IEP. In any case, neither the Ms nor District 203 had produced any written communication immediately prior to, during, or immediately after the meeting, apprising the Ms of their procedural rights. Indeed, from the first identification and evaluation of Max as a student requiring special education, the winter of his freshman year to the end of the summer following his sophomore year, no indication exists that shows that the Ms were ever notified, orally or in writing, of the procedures available to them through which they could have received a hearing to review District 203's decisions concerning Max. Yet for much of this time, the Ms clearly expressed to District 203 their dissatisfaction with Max' progress and the school's program for him. The Ms requested counseling by a particular staff counselor in January, 1978, but were told that he was too busy. The parents objected in February, 1978 to Max' placement in two special education classes. The Ms requested modification of Max' schedule during his sophomore year and other help to get Max to counseling appointments, but were told this could not be provided. In May, 1979, at a conference held at the end of Max' sophomore year, Mrs. M expressed dissatisfaction with the program and services provided to Max. A week later, in June, 1979,

Mrs. M. called the school to state that she was very discouraged with the end-of-year conference. She voiced her unhappiness with the school's recommendation that Max be placed in a separate facility, the Central Campus Learning Center ("CCLC"). The school repeatedly recommended outside psychotherapy, and the Ms repeatedly explained their inability to pay for such services.

Each expression of dissatisfaction voiced by the Ms constituted a point at which, if properly informed, the Ms could have exercised their procedural rights under the EAHCA. In all fairness to the defendants, District 203 did respond to several of the Ms' requests and objections. Furthermore, District 203 did meet numerous times with the Ms over this period. However, the fact remains that as of July, 1979, District 203 had never provided notice, written or oral, to the Ms of their procedural rights, in clear violation of 34 C.F.R. § 300.504, .505 (1983).

In this state of ignorance, Mr. and Mrs. M. engaged Dr. Robert L. Rosenfeld, a psychiatrist, to begin treating Max on a weekly basis. These sessions began on July 6, 1979, during the summer between Max' sophomore and junior years. The Ms contend, and the defendants' do not contradict, that the reasoning for engaging Dr. Rosenfeld was due in large part to the school's insistent recommendation that Max get psychotherapy for which the Ms would have to bear the cost themselves.

The procedural violations by District 203 continued during Max' junior and senior years. In early August, 1979, prior to the beginning of Max' junior year, Max was re-evaluated by the school psychologist in preparation for the 1979–80 IEP. Again, the District sent no written notice of procedural rights. The psychologist's findings confirmed his observations, made some 20 months earlier, that Max was confused and dysfunctional, and required intensive, long-term psychotherapy. At a staff meeting with the Special Education Committee on August 16, the committee again decided that Max should be placed in the CCLC,

and called for a meeting to discuss this conclusion with the Ms. That meeting took place on August 20, 1979, at the office of Dr. Rosenfeld, Max' new psychiatrist. Present were defendant James Wolter, Director of Special Education, the Ms, and Dr. Rosenfeld. The parties support their allegations concerning the events of that meeting with excerpts from the "Due Process Administrative Hearing" that was held sometime after Max' graduation on October 13, 1981. The transcript presents a conflicting picture of what occurred. Dr. Rosenfeld is quoted in the transcript as saying:

> I raised the question of whether there was inadequacy [in] this program, and Dr. Wolter's response was that that could be reviewed at a later date, and that there was always that option of a due process investigation whether there was inadequacy. I would like to add one thing at this point. I think that I can't speak for them [Mr. and Mrs. M.], but the impression was almost left that this was something that could be initiated by the school. (TR., page 151)

Dr. Wolter's testimony was not to the contrary, but he added that at that August 20, 1979 meeting, he actually presented the parents with a copy of Art. 10 of the Illinois State Board of Education Rules and Regulations to Govern the Administration and Operation of Special Ed, a list of their due process rights, and a list of advocates that the plaintiffs could obtain at no charge. Plaintiffs, represented by counsel at the time Dr. Wolter testified concerning the earlier meeting, neither contradicted nor questioned his testimony. However, Mrs. M. does now, by affidavit state, "We were never informed of any of our rights under the special ed laws until sometime in our son's senior year."

If Dr. Wolter's testimony is to be believed, then it appears that District 203 did finally attempt to comply with some provisions of 34 C.F.R. § 300.504, 505 (1983), on August 20, 1979. The parents were given written copies of their procedural rights, and subsequently, on September 9, 1979,

were shown an IEP for the 1979–80 school year placing Max in the CLCC. Mr. and Mrs. M. consented to the placement at CLCC and signed the IEP. From this point, through the remainder of his high school education, Max was at the CLCC, and apparently made steady progress. Throughout this period, he was also treated by Dr. Rosenfeld, the private psychiatrist, at the Ms' expense and with the knowledge of District 203. The Ms, if informed of their procedural rights, as claimed by Dr. Wolter, never attempted to exercise them during this period.

An IEP was prepared for Max' final year, 1980–81, and was discussed with the Ms on a parents' night in October, 1980. Again, no written notice conforming to 34 C.F.R. § 300.505 (1983), was sent. The copy of the 1980–81 IEP that was part of the administrative record was blank where the parents' and student's signatures should have appeared.

Finally, on May 15, 1981, District 203 wrote the Ms stating that Max was scheduled to be graduated, and that, as a result, he would no longer be eligible for special education or related services. The letter stated, "Since graduation constitutes a change in special education status, you may appeal the decision to graduate...." According to Mrs. M's affidavit, this was the first time that the Ms had been given notice, written or oral, of their procedural rights. The Ms questioned the efficacy of the District's decision, given Max' poor grades, and obtained an independent psychological evaluation of Max during the summer of 1981. Based on the examiner's recommendation that Max be afforded ad-ditional vocational training or advanced educational programming, the Ms requested a due process hearing which was held on October 13, 1983.

That District 203 violated procedural regulations throughout Max' four years is evident. Though numerous conferences took place both in person and over the telephone, the *written* notice requirements of 34 C.F.R. § 300.504, .505 (1983) were never met, insofar as the regulations required District 203 to inform Mr. and Mrs. M. of their right to a due process hearing and other procedural safeguards. The only possible exception to these violations was the conference prior to Max' junior year on August 20, 1979 attended by Max' private psychiatrist, the Ms, and Dr. Wolter. The testimony by Dr. Rosenfeld concerning Dr. Wolter's comments on a due process hearing suggests that the gist of Wolter's message was unclear. In any case, the communication did not satisfy 34 C.F.R. § 300.-504, 505 (1983) because it was oral. Dr. Wolter's own uncorroborated testimony suggests that he gave plaintiffs a copy of the Rules and Regulations. Whether or not the Ms actually received the Rules and Regulations is immaterial, however. The written notice requirements must include a full explanation of all the procedural safeguards ... written in language understandable to the general public. 34 C.F.R. § 300.505 (1983). The unembellished technical language of the Rules and Regulations, without more, simply does not meet this standard. Thus, the plaintiffs' procedural rights under the EAHCA were clearly violated.[9]

9. The plaintiffs also allege procedural violations under 34 C.F.R. 300.344, .345 (1983), insofar as they were deprived of the opportunity to participate in meetings. Though the foregoing discussion of facts may have revealed some technical violations of the regulations, these violations were only of the letter and not the spirit of § 300.344, .345.

Clearly, District 203 conducted several regular meetings with the Ms in person and over the phone. The Ms were also listened to, at least to some extent by District 203. This was especially true when the school changed its plan to put Max in a special education class during his sophomore year. Thus, if any technical violations existed, they were minimal. Given the regular efforts of District 203 to communicate with the Ms and let the Ms participate, this Court, as a matter of law, cannot find that the alleged violations were in an egregious fashion amounting to bad faith.

Finally, the plaintiffs argue that District 203's failure to provide Max with the proper psychotherapy violated Max' substantive rights under the EAHCA. This issue, however, is irrelevant to a claim for damages under the EAHCA. The Seventh Circuit decision in *Anderson v. Thompson*, 658 F.2d 1205, 1213 (7th Cir.1981), specifi-

## C. *The Bad Faith Issue*

██ Based on the determination that procedural violations have occurred under the EAHCA, the question becomes under what circumstances will such violations entitle the plaintiffs, as a matter of law, to receive damages for the cost of Max' psychotherapy. Although a damage remedy is generally not appropriate under the EAHCA, certain "exceptional circumstances" have been identified whereby damages, limited to reimbursement, might be available. *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981). In *Anderson,* the Court suggested that reimbursement for the parents' cost of obtaining services that were required under the EAHCA might be appropriate either 1) where "the Court determines that the services in dispute were necessary to protect the physical health of the child," *Id.* at 1213, or 2) where the school agency has "acted in bad faith by failing to comply with the procedural safeguards of [20 U.S.C. § 1415 (1976) ] in an egregious fashion." *Anderson,* 658 F.2d at 1214. The rationale behind the Court's limitation of the damage remedy was based on its interpretation of the legislative intent behind the EAHCA. *Id.* at 1211–13. The *Anderson* court believed that the appropriate relief contemplated by § 1415 is generally injunctive in nature, giving the district judge wide latitude in fashioning an IEP for a handicapped child. *Id.* at 1211.

The plaintiffs' initial complaint against the defendants alleged that both *Anderson* exceptions were applicable to their claims for damages. In *Max M. v. Thompson,* 566 F.Supp. 1330, 1336 (N.D.Ill.1983), this Court's first published order, the first exception concerning the protection of physical health was found to be inapplicable. Although the plaintiffs now urge the Court to extend this exception to include "mental health emergencies," this Court finds no grounds to infer that the *Anderson* ruling contemplated such an expansion. Accord-

ingly, the first exception noted in *Anderson* is inapplicable to this claim. The second *Anderson* exception requiring a showing of bad faith on the part of the defendants presents a more cognizable basis for the plaintiffs' claim for reimbursement. As a general rule, an issue of bad faith is not appropriate for summary judgment. Summary judgment is proper only where "there is no genuine issue as to any material fact." F.R.Civ.P. 56(c). "Cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants." *Conrad v. Delta,* 494 F.2d 914, 918 (7th Cir.1974); *Accord, Askew v. Bloemker,* 548 F.2d 673, 679 (7th Cir.1976).

Defendants argue that *Teplitz v. Mt. Prospect Elementary School District,* 117 Ill.App.3d 495, 73 Ill.Dec. 46, 453 N.E. 871 (1st Dist.1983) is applicable to the case before this Court. In *Teplitz,* the plaintiffs sued in state court for reimbursement of out-of-pocket expenses incurred in placing their learning-disabled child in a private school after the public school district failed to provide an appropriate IEP. A long series of meetings and conferences were conducted from 1975 to 1977 at which time the plaintiff parents enrolled their child in a private school. *Id.* at 497, 73 Ill.Dec. at 48, 453 N.E.2d at 873. Not until October of 1977 were the parents advised of their right to object to the program designed for their child and request a review hearing. *Id.* at 497, 73 Ill.Dec. at 48, 453 N.E.2d at 873. The *Teplitz* court found that the plaintiffs' procedural rights had been violated in that the school district had failed to timely provide the parents with notice of their procedural safeguards. *Id.* at 500, 73 Ill.Dec. at 50, 453 N.E.2d at 875. Yet, relying on the *Anderson* exception, the Court stated: "We cannot infer bad faith

cally rejected claims for damages based on errors in educational programming. Although the plaintiffs argue that the defendants were acting in bad faith when they violated Max' substantial rights, the *Anderson* bad faith exception applies

only to procedural and not substantial violations. *Id.* at 1214. As the nature of the plaintiffs' argument falls squarely in this prohibition, these claims are dismissed.

**1450**

merely from the school districts failure to inform [plaintiffs] of their procedural rights...." *Id.* at 501, 73 Ill.Dec. at 50, 453 N.E.2d at 875. The *Teplitz* court concluded that "the school district's initial failure to comply with the procedural provisions was not so egregious as to justify reimbursement for the [plaintiffs]...." *Id.* at 501, 73 Ill.Dec. at 50, 453 N.E.2d 875. Thus, the Court granted summary judgment for the defendants and extinguished the claims of the plaintiffs. *Id.* at 502, 73 Ill.Dec. at 50–51, 453 N.E.2d at 875–76.

At first glance, *Teplitz* appears to be identical to the situation currently before this Court. Both deal with the failure of a school district to notify plaintiffs of their procedural safeguards under the EAHCA. Viewing the present case in light of what the defendants knew about Max, their cognizance of the Ms' inability to pay for private counseling, and their awareness of the Ms' repeated objections and expressions of dissatisfaction over Max' education, the repeated violations of the plaintiffs' procedural rights by the defendants clearly outnumber and outweigh those identified in *Teplitz*. Moreover, in *Teplitz*, it appears that at least at some point during the child's third year of high school, the school district did inform the parents in writing of their right to object to the proposed IEP and seek review. 117 Ill.App.3d at 497, 73 Ill.Dec. at 48, 453 N.E.2d at 873. In the instant case, no doubt exists as to the failure of the defendants to properly notify the plaintiffs in writing of the procedural rights provided under § 1415. Thus, *Teplitz* is distinguishable from the present controversy.

The issue of whether the procedural violations in failing to notify plaintiffs of their due process rights were in bad faith in this case is not appropriate for summary judgment. From the facts previously set forth, it is clear that a genuine issue of material fact remains.

### III. CONCLUSION

The parties' cross-motions for summary judgment are denied. Although this Court finds that the psychotherapy received by Max is a related service in the context of § 1401(17), and that procedural violations of § 1415 did occur, the issue of bad faith is not appropriate for summary judgment. Thus, the remaining issues of fact are (1) whether the failure of the defendants to notify the plaintiffs of their procedural rights was in bad faith, and, if so, (2) what proportion of the $8,825 is reimbursable based on the cost of providing an equivalent level of treatment by a guidance counsellor, social worker or psychologist.

IT IS SO ORDERED.