576 F.Supp. 420 (1983)
T.G. and P.G., Individually, and on Behalf of Their Infant Child, "D.G.", Plaintiffs,
v.
BOARD OF EDUCATION OF PISCATAWAY, N.J., and the Community Mental Health Center of Rutgers Medical School, Defendants
v.
PRUDENTIAL INSURANCE COMPANY OF AMERICA, INC., and Blue Cross-Blue Shield, Third-Party Defendants.
Civ. A. No. 82-3948.
United States District Court, D. New Jersey.
December 12, 1983.
Theodore A. Sussan, Spotswood, N.J., for plaintiffs.
Irwin I. Kimmelman, Atty. Gen. of New Jersey by Robert K. Walsh, Newark, N.J., for Defendant Community Mental Health *421 Center of the University of Medicine & Dentistry of N.J.
Pitney, Hardin, Kipp & Szuch, by Peter Laughlin, Newark, N.J., for third party defendant Blue Cross Plan of N.J.
Rubin, Lerner & Rubin by David B. Rubin, New Brunswick, N.J., for defendant Board of Educ. of Piscataway.
Shanley & Fisher by Charles A. Reid, III, Newark, N.J., for third party defendant Prudential Ins. Co. of America, Inc.
Vanderbilt & Siegel by Alan A. Siegel, Livingston, N.J., for third party defendant Blue Shield Plan of N.J.
HAROLD A. ACKERMAN, District Judge.
This matter arises under the Education For All Handicapped Children Act, 20 U.S.C. § 1401 et seq. (the Act). Plaintiff D.G. is an eleven-year old boy who was classified as emotionally disturbed by the Child Study Team (CST) of the defendant Board of Education of Piscataway (Board). D.G. and his parents T.G. and P.G. commenced this action on November 22, 1982, seeking to have the defendant Board pay the principal charges plus any interest due and owing to the defendant Community Mental Health Center of the Rutgers Medical School for "psychotherapy" services allegedly provided as part of plaintiff D.G.'s Individualized Education Plan (IEP) developed by the CST. The defendant Community Mental Health Center has counterclaimed for the amount due and owing, cross-claimed for same against the defendant Board, and impleaded the Prudential Insurance Company of America, Blue Cross of New Jersey, and Blue Shield of New Jersey, all of whom are plaintiff T.G.'s health insurance carriers. This matter is presently before me on motions for summary judgment brought by plaintiffs, defendant Board of Education, and by third-party defendants Prudential Insurance Company of America, Blue Cross of New Jersey and Blue Shield of New Jersey.
Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is not to be granted unless, after all reasonable inferences have been drawn in favor of the non-moving party, there remains no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See DeLong Corp. v. Raymond International, 622 F.2d 1135 (3d Cir.1980). With this standard in mind, I turn first to consider plaintiffs' motion for summary judgment. For the reasons which follow, I have determined to grant plaintiffs' motion.
The undisputed facts relevant to this motion are as follows: Pursuant to the requirements of the Act, the Child Study Team of the defendant Board carefully evaluated plaintiff D.G.'s condition and as a result classified him as emotionally disturbed. Following discussion with D.G.'s parents, the CST recommended that D.G. be placed in a therapeutic environment in order to maximize the benefits he would receive. Specifically, the Child Study Team's IEP recommended that D.G. "[b]e provided with a totally therapeutic environment in a special education day school for the Emotionally Disturbed that will provide him with the controls and individual attention necessary for his social and emotional development. This is viewed as the least restrictive environment to meet his needs." It was agreed upon between the defendant Board and D.G.'s parents that the child would be placed in the Child Day Hospital of the Community Mental Health Center of the Rutgers Medical School, University of Medicine and Dentistry of New Jersey. This placement commenced on September 30, 1980.
The Child Day Hospital is a specialized treatment program for seriously emotionally impaired children. As such, the Hospital provides, in its own words, "individual child psychotherapy, family therapy, and a broad spectrum of milieu therapy on an integrated, intensive basis." Educational services are also provided in an effort to enhance learning by each of the children involved while they are in therapy. When D.G.'s parents placed him in the Child Day Hospital, *422 they were told that the program required without exception that every child participate in the "therapeutic treatment" portion of the day program.
D.G. remained at the Hospital until January 20, 1983, when, due to the success of the Hospital's program, he was able to return to his local school. The program at the Hospital had consisted of individual child psychotherapy two days a week, family therapy with the parents, and with or without the child, weekly or as indicated, mileau therapy on a daily basis, including therapeutic activity group, individual and group counseling and behavior modification, as well as special education on a daily basis in self-contained and departmentalized classes.
On October 24, 1980, plaintiffs T.G. and P.G. were informed by the Community Mental Health Center that the psychotherapy provided to D.G. as part of the Hospital's program would be assessed to them, and not to the school district, and that it would be charged at a rate of $45.00 per day. The Center has to date received no payments for these charges, which at the time of D.G.'s discharge had grown to a total of $25,200.00.
In 1982 the parents sought to have the Board take responsibility for the cost of the psychotherapy. The Board refused to do so, giving the parents three reasons for its decision. First, it suggested that psychotherapy was not part of the IEP agreed to by both the Board and the parents. Second, it pointed to the fact that the New Jersey Department of Education had issued a policy statement to the effect that "psychotherapy" other than that necessary for diagnostic and evaluative purposes, was not a "related service" for which a local school district would be responsible under the mandate of the Act. Finally, the defendant Board took the position that nothing else in the Act or its implementing regulations required it to pay for this service. Plaintiffs then as now responded that psychotherapy is a "related service" within the meaning of the Act, and that in any event it was an integral and, in fact, required part of the Independent Education Program agreed upon by the defendant Board, the cost of which should be borne by the Board.
The Education For All Handicapped Children Act requires that all handicapped children be provided, at public expense, with a "free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c). As Justice Rehnquist, speaking for the Supreme Court in Board of Education v. Rowley, 176 U.S. 458, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), stated, "the Act represents an ambitious federal effort to promote the education of handicapped children, and was passed in response to Congress' perception that a majority of handicapped children in the United States `were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to "drop out"'". Id. at 179, 102 S.Ct. at 3037 (citations omitted).
Under the Act, the "free appropriate public education" to be provided must be specially "tailored to meet the unique needs of the handicapped child" by means of the IEP. Id. at 181, 102 S.Ct. at 3038. The IEP is to be prepared at a meeting between a qualified representative of the local educational agency, the child's teacher, the child's parents or guardians, and where appropriate, the child. Local educational authorities must review, and if necessary, revise each child's IEP, including its statement of goals and objectives and list of specific services to be provided, at least annually. 20 U.S.C. § 1414(a)(5).
Here there is no dispute that an appropriate IEP was prepared and agreed upon by the defendant Board and plaintiff parents. Further, there is no dispute that these parties also agreed to the implementation of the IEP through D.G.'s placement in the Child Day Hospital. The sole issue before me is whether the "psychotherapy" or counseling services provided by the Hospital staff to D.G. constitutes a covered "related service" within the meaning of 20 U.S.C. § 1400(c).
*423 The Act itself provides the starting point for my analysis. Section 1401(17) provides that:
The term `related services' means transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling service, except that such medical services shall be for diagnostic and evaluative purposes only) as may be required to assist a handicapped child to benefit from special education..."
The Federal Regulations promulgated pursuant to the Act provide a further layer of definitions. 34 C.F.R. § 300.13(b)(8) provides that "psychological services" as used in the Act includes:
... (V) Planning and managing a program of psychological services, including psychological counseling for children and parents.
Additionally, 34 C.F.R. § 300.13(b)(2) provides that "`Counseling services' means services provided by qualified social workers, psychologists guidance counselors, or other qualified personnel."
Thus, while no explicit reference to "psychotherapy" is made in either the Act or the regulations, the definitions of "related services" which are provided are indicative of a Congressional intent to include it where appropriate among those services to be provided at no cost to the parents under the Act. This conclusion is reinforced by the fact that the only two published opinions on this issue have both reached the same result. See Papacoda v. State of Connecticut, 528 F.Supp. 68 (D.Conn.1981); and In the Matter of the "A" Family, 184 Mont. 145, 602 P.2d 157 (1979). In the latter of these two cases, the Montana Supreme Court determined that, as a matter of federal law, the psychotherapy provided to an emotionally disturbed child who was placed in a residential setting pursuant to his IEP was a "related service" under the Act, despite the fact that the Montana State Board of Education had promulgated regulations which considered psychiatric therapy to be outside the definition of "related services" and thus chargeable to the parents. The Montana Supreme Court held that the federal regulations defining "related services" and "psychological services" superceded the inconsistent state regulations. In Papacoda, the District Court held that psychotherapy provided to an emotionally disturbed child as an integral part of that child's special education was a "related service" within the meaning of the Act.
Both of these opinions pre-dated the Supreme Court's opinion in Board of Education v. Rowley. I find, however, that Rowley does not require a different result. In Rowley, the respondents  the parents of a child with only minimal residual hearing who had been furnished by the petitioner Board with a hearing aid for use in the classroom and who received additional instruction from tutors  filed suit to review a decision denying their request for a sign-language interpreter to accompany the child in all her classes. The District Court, although finding that she performed better than the average child in her class and was advancing easily from grade to grade, determined that she was not performing as well academically as she would without her handicap. 483 F.Supp. 528, 532. This disparity between her achievement and her potential led the district court to decide that she was not receiving a "free appropriate education," which it defined as "an opportunity to achieve [her] full potential commensurate with the opportunity provided to other children." Id. at 534. A divided panel of the Second Circuit affirmed. The Supreme Court reversed, holding that the Act's requirement is satisfied by the Board's provision of "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." 458 U.S. at 203, 102 S.Ct. at 3049. The Court noted that "such instruction and services must be provided at public expense, must meet the State's educational standards, must approximate the grade levels used in the State's regular *424 education, and must comport with the child's I.E.P." Id.
I conclude that the therapy provided to D.G. at the Child Day Hospital is of a different nature from the extraordinary sign-language services requested for the handicapped child in Rowley. To the contrary, both the defendant Board and the plaintiff parents agreed upon D.G.'s placement at Child Day Hospital, and the therapy provided to D.G. by the Hospital was a required part of its program. As such, the therapy was designed as an essential service to allow D.G. to simply benefit from the educational program planned for him. It was not designed as part of a package to maximize his performance in accordance with his potential, as was the case in Rowley.
Additionally, while sign language translation services are not mentioned in either the Act or its regulations, both mention psychological services. In fact it is undisputed here that the so-called psychotherapy which D.G. received at the Hospital, while administered under the supervision of a trained psychiatrist, was actually provided on a day-to-day basis by a staff member with no more credentials than a Masters in Social Work degree. Thus D.G.'s therapy might be described equally appropriately as "counseling services" or "psychological counseling"  both of which are specifically included by the regulations among the "related services" required to be provided at no cost to the parents under the Act.
My conclusion that the services received by D.G. must be paid for by the defendant Board is unaffected by its argument that New Jersey's policy is to the contrary. The defendant Board has submitted a copy of a "Policy Statement" by James W. Richardson, Director of the Bureau of Special Education of the New Jersey Department of Education concluding that "`psychotherapy,' as a related service that goes beyond that which can be educationally provided by personnel employed by the local school district, is not the responsibility of the local school district." In so stating, Mr. Richardson relies on the definition of "related services" found in Section 6:28-1.2 of the N.J.Admin.Code. I find, however, that the definitions contained in the federal regulations must supercede inconsistent state regulations and "policy statements." See 34 C.F.R. § 300.2(a).
In these circumstances I find that the therapy provided to D.G. falls within the category of "related services" the cost of which must be assumed by the defendant Board of Education of Piscataway. I will therefore grant plaintiffs' motion for summary judgment as against the defendant Board.
In light of this disposition of plaintiffs' motion, I will also grant the motions for dismissal by third-party defendants Prudential Insurance Company of America, Blue Cross of New Jersey and Blue Shield of New Jersey.