TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | No. 91-204 |
| of | : | |
| | : | DECEMBER 24, 1991 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| RONALD M. WEISKOPF | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE SAM FARR, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following questions relating to Government Code section 7579.5:

1. Do the rights of a surrogate parent extend to consenting for residential placement of the child?

2. Do the rights of a surrogate parent extend to consenting to psychotherapy treatment for the child?

3. May a surrogate parent be appointed before a natural parent of the child is located?

4. May a person designated by the parent to represent the interests of a child for educational and related services sign an individualized education program and consent to residential placement and psychotherapy treatment of the child on behalf of the parent?

5. Would local mental health agencies be subject to liability for performing their services without the permission of the natural parent or legal guardian, if the surrogate parent has consented by signing the assessment or individualized education program?

CONCLUSIONS

1. A surrogate parent may consent to the residential placement of a child when it is necessary to permit the child to benefit from a special education program.

2. A surrogate parent may consent to psychotherapy treatment when it is necessary for the child to benefit from a special education program.

3. A surrogate parent may be appointed before a natural parent is located if the child has been adjudicated a dependent or ward of the juvenile court, the parent is not known or cannot be identified, or reasonable efforts have been made to discover the parent's location.

1.                                                                                                    91-204

4. A person designated by a parent to represent the interests of a child for educational and related services may sign an individualized education program and consent to residential placement and psychotherapy treatment of the child on behalf of the parent.

5. Local mental health agencies would not be subject to liability for performing their services without the permission of the natural parent or legal guardian, if a duly appointed surrogate parent has consented by signing the assessment or individualized education program.

ANALYSIS

Government Code section 7579.5[1] states in part:

"(a) ....

"(b) A local educational agency shall appoint a surrogate parent for a child under one or more of the following circumstances:

"(1) The child is adjudicated a dependent or ward of the court ... upon referral of the child to a local educational agency for special education and related services, or in cases where the child already has a valid individualized education program.

"(2) No parent for the child can be identified.

"(3) The local education agency, after reasonable efforts, cannot discover the location of a parent.

"(c) For the purposes of this section, the surrogate parent shall serve as the child's parent and shall have the rights relative to the child's education that a parent has under Title 20 (commencing with section 1400) of the United States Code and pursuant to Part 300 of Title 34 (commencing with section 300.1) of the Code of Federal Regulations. The surrogate parent may represent the child in matters relating to identification, assessment, instructional planning and development, educational placement, reviewing and revising the individualized education program, and in all other matters relating to the provision of a free appropriate public education of the child.

"(d) . . . . . . . .

"(e) . . . . . . . .

"(f) . . . . . . . .

"(g) . . . . . . . .

"(h) Nothing in this section shall be interpreted to prevent a parent or guardian of an individual with exceptional needs from designating another adult individual to represent the interests of the child for educational and related services."

---

[1] All section references are to the Government Code unless otherwise specified.

The statutory scheme of which section 7579.5 is a part pertains to the special education requirements of children with disabilities. As specified in section 7579.5, a "surrogate parent" is one who has the authority to make certain educational decisions for a child and does not refer to a biological surrogate parent. The five questions presented for analysis concern various rights of a surrogate parent under the provisions of section 7579.5.

By way of background, we note that the Legislature has granted all children with disabilities a right to receive a free appropriate public education. (Ed. Code, §§ 56000, 56040.) In addition, in what is now called the "Individuals with Disabilities Education Act," Congress has provided financial assistance for states and local educational agencies to provide such persons with "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." (20 U.S.C. § 1400.)

An individualized education program ("IEP") formulated for each child with a disability (Ed. Code, § 52340 et seq.; cf. 20 U.S.C. §§ 1401, 1412, 1414; 34 C.F.R. §§ 300.340-300.349) is "a comprehensive statement of educational needs ... and the specially designed instruction and related services to be employed to meet those needs." (*Burlington School Comm. v. Mass. Dept. of Ed.* (1985) 471 U.S. 359, 368.) The IEP is "developed jointly by a school official qualified in special education, the child's teacher, the parents or guardian, and where appropriate, the child." (*Ibid.*; see Ed. Code, §§ 56321, 56341, 56346; 62 Ops.Cal.Atty.Gen. 721, 722 (1979).)

As previously mentioned, a "surrogate parent" in this context refers to one who is appointed to protect the right of a child with a disability to receive a free appropriate public education. Education Code section 56050 provides in part:

"(a) For the purposes of this article, 'surrogate parent' shall be defined as it is defined in the federal regulations adopted pursuant to Public Law 94-142.

"(b) A surrogate parent may represent an individual with exceptional needs in matters relating to identification, assessment, reviewing and revising the individualized education program, and in other matters relating to the provision of a free appropriate education to the individual.

". . . . . . . . . . . . . .

"(d) A surrogate parent shall also be governed by section 7579.5 of the Government Code."[2]

1. Consent for Residential Placement

The first question presented for resolution is whether a surrogate parent may consent to the residential placement of a child under the terms of section 7579.5. We conclude that a surrogate parent may do so under certain circumstances.

Providing special education and related services may require out-of-home residential placement for the child, if that is necessary for educational purposes. (*San Francisco Unified School Dist. v. State of California* (1982) 131 Cal.App.3d 54, 69, 71.) In this regard, the California Code of Regulations, title 5, section 3042, provides:

---

[2]"Public Law 94-142" refers to the Education of All Handicapped Children Act of 1975. (See 20 U.S.C. § 1415(b)(1)(B); 34 C.F.R. § 300.514.)

"Specific educational placement means that unique combination of facilities, personnel, location or equipment necessary to provide instructional services to an individual with exceptional needs, as specified in the individualized education program, in any one or a combination of public, private, home and hospital, or residential settings."

As previously shown, a parent has a right to participate in the formulation of the IEP in which residential placement of the child would (as one alternative) be designated. (Ed. Code, § 56341; 20 U.S.C. §§ 1401, 1425; 34 C.F.R. §§ 300.344-300.345.) Parental consent is specifically required prior to a child's special education placement. (Ed. Code, § 56346; 34 C.F.R. § 300.504(b)(ii).)

Thus in the formulation of an IEP, a parent, and therefore a surrogate parent (§ 7579.5, subd. (c)), would have authority to make educationally related out-of-home placement decisions with respect to the child.[3]

In answer to the first question, therefore, we conclude that under the provisions of section 7579.5, a surrogate parent may consent to the residential placement of the child when it is necessary for the child to benefit from a special education program.


2.  Consent for Psychotherapy Treatment

The second question posed is whether a surrogate parent may consent to the psychotherapy treatment of the child under the terms of section 7579.5. We conclude that a surrogate parent may so consent.

The right of a child with a disability to receive a free appropriate public education includes the right to receive those services, including health and nursing, psychological, and other supportive services, as may be necessary to permit the child to benefit educationally from that instruction. (Ed. Code, § 56363; 20 U.S.C. § 1401(a)(17); 34 C.F.R. § 300.13; cf. *Hendrick Hudson Dist. Bd. of Ed. v. Rowley* (1982) 458 U.S. 176, 188-189, 203; *McKenzie* v. *Jefferson* (D.D.C. 1983) 566 F.Supp. 404, 411.) The extent and description of these related services are set forth in detail in section 3051 of title 5 of the California Code of Regulations. These services would include psychological services (34 C.F.R. § 300.13(a)), such as psychological counseling (34 C.F.R. § 300.13(b)(2)), psychotherapy (cf. *T.G.* v. *Bd. of Educ. of Piscataway* (D. N.J. 1973) 576 F.Supp. 420, 423-424; *Papacoda* v. *State of Connecticut* (D. Conn. 1981) 528 F.Supp. 68, 72), and behavior

---

[3]Any out-of-home residential placement must be made for educational, as opposed to strictly medical or other, purposes. (Cf. 34 C.F.R. § 300.302 ["If placement in a public or private residential program is necessary to provide special education and related services to a handicapped child, the program, including non-medical care and room and board, must be at no cost to the parents of the child .... This requirement applies to placements which are made by public agencies for educational purposes ...."]; see *San Francisco Unified School Dist. v. State of California, supra*, 131 Cal.App.3d at 69, 71; *McKenzie v. Smith* (D.C. Cir. 1985) 771 F.2d 1527, 1534; *Abrahamson v. Hershman* (1st Cir. 1983) 701 F.2d 223, 227-228; *Kauelle v. New Castle County Sch. Dist.* (3d Cir. 1981) 642 F.2d 687, 693.)

modification (*Chris C.* v. *Montgomery County Bd. of Educ.* (M.D. Ala. 1990) 743 F.Supp. 1524, 1529-1530).[4]

As previously noted, a surrogate parent has the same rights as a parent relative to the child's education and may represent the child in matters relating to assessment, planning, development, and "all other matters relating to the provision of a free appropriate public education . . . ." (§ 7579.5, subd. (c).)  To the extent that any of these related services are needed to enable the child to take advantage of and benefit from a special education program, the surrogate parent would have the same authority as a parent to consent to the providing of these services.

It is concluded that a surrogate parent may consent to psychotherapy treatment which is necessary for the child to benefit from a special education program.

3.  Appointment of Surrogate Parent

The third question presented is whether a surrogate parent may be appointed before locating the child's natural parents.  We conclude that section 7579.5 grants such authority.

Subdivision (b) of section 7579.5 provides:

"A local educational agency shall appoint a surrogate parent for a child under one or more of the following circumstances:

"(1)  The child is adjudicated a dependent or ward of the court ...  upon referral of the child to a local educational agency for special education and related services, or in cases when the child already has a valid individualized education program.

"(2)  No parent for the child can be identified.

"(3)  The local educational agency, after reasonable efforts, cannot discover the location of a parent."

The statutory language is clear and unambiguous.  A surrogate parent may be appointed before a natural parent is located when the child is adjudicated a dependent or ward of the court, when a parent is not known or cannot be identified, or where the local educational agency after reasonable efforts cannot discover the parent's location. (Cf. 20 U.S.C. § 1415(b)(1)(B); 34 C.F.R. § 300.514.)  What would constitute "reasonable efforts" in a particular case would depend upon all the facts and circumstances.

We therefore conclude that a surrogate parent may be appointed before a natural parent is located in situations where the child has been adjudicated a dependent or ward of the juvenile court, where the parent is not known or cannot be identified, or where reasonable efforts have been made to discover the parent's location.

---

[4]Similar to the situation of an out-of-home residential placement determination, the related services that a child may receive would be limited to those intended to assist the child in benefitting from his or her special education program.  (Cf. 20 U.S.C. § 1401(17); 34 C.F.R. §§ 300.13 - 300.14.)

4.  Parental Designation

We are asked in the fourth question whether a person designated by a parent to represent the interests of a child for educational and related services may sign the IEP or consent to residential placement and psychotherapy treatment of the child on behalf of the parent.  We conclude that the designated person may do so.

Subdivision (h) of section 7579.5 expressly provides as follows:

"Nothing in this section shall be interpreted to prevent a parent or guardian of an individual with exceptional needs from designating another adult individual to represent the interests of the child for educational and related services."

We have examined in detail the legislative history regarding the enactment of section 7579.5 (Stats. 1990, ch. 182, § 5).  In the report of the Assembly Committee on Human Resources (Aug. 23, 1989), one of the legislative purposes was specified as follows:

"Provides that a parent or guardian of a child eligible for services under this act may designate another adult individual to represent the interests of the child for educational and related services."

A similar statement is contained in the Enrolled Bill Report of the Department of Social Services of the Health and Welfare Agency (June 22, 1990) as to the latter's understanding of the legislative purpose:

"The bill establishes basic requirements for the appointment of a surrogate as follows:

" . . . . . . . . . . . . . . ..

"A parent or guardian may designate another adult to act on behalf of the child in regard to educational services without requiring the appointment of a surrogate parent."

Not only is it "well established that reports of legislative committees and commissions are part of a statute's legislative history and may be considered when the meaning of a statute is unclear" (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7), but "[t]he contemporaneous construction of a new enactment by the administrative agency charged with its enforcement, although not controlling, is entitled to great weight" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1388).  (See also *Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 743; *Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570.)

It is also to be noted that Education Code section 56341 authorizes as a member of an individualized education program team:  "[o]ne or both of the pupil's parents, a representative selected by the parent, or both . . . ."  Under federal law the definition of "parent" for purposes of representing a child in the special education process includes "a person acting as a parent of a child." (34 C.F.R. § 300.10.)  The comment to the federal regulations states that "the term *parent* is defined to include acting in the place of a parent  . . . ."

Both state and federal law thus recognize the right of parents to designate their own representative, besides the authority of a local educational agency to appoint a surrogate parent when the natural parents cannot be found.

We therefore conclude that a person designated by a parent to represent the interests of a child for educational and related services may sign the IEP and consent to residential placement and psychotherapy treatment of the child on behalf of the parent. Section 7579.5 does not preclude such parental right; rather, it recognizes such authority.

5. Liability of Agency Provider

The final question presented is whether local mental health agencies would be subject to liability for performing their services without the permission of the natural parent or legal guardian, where the surrogate parent has signed the assessment and the IEP. We conclude that they would not be liable.

By signing an assessment, a parent consents to have inquiry made into the child's special educational needs by, *inter alia*, testing procedures administered by qualified persons. (Ed. Code, §§ 56320, 56324.) By consenting to an IEP, a parent agrees to the program of special education and related services that the child will receive under it. (Cf. Ed. Code, §§ 56321(b)(4), 56346.)

Under both state and federal law, a surrogate parent stands in place of the parent and has all the rights a parent has to see that a child receives an appropriate free public education. (§ 7579.5, subd. (c); Ed. Code, §§ 56028, 56050; 34 C.F.R. §§ 300.10, 300.541(e).) Indeed, for the purposes of both, the surrogate parent is deemed the parent. (Ed. Code, § 56028; 34 C.F.R. § 300.10.) A surrogate parent has the same authority to consent to an assessment and formulation of an IEP as does the natural parent.

Moreover, a surrogate parent is appointed at times when a natural parent is unknown or cannot be located. (§ 7579.5, subd. (c); Ed. Code, §§ 56028, 56050; 20 U.S.C. § 1415(b)(1)(B); 34 C.F.R. §§ 300.541(e).) It follows that the consent of a surrogate parent must be legally sufficient for an assessment and the related services necessary for the special education of a child; otherwise, the child could not receive the free appropriate public education to which he or she is entitled by law.

We therefore conclude that local mental health agencies would not be subject to liability for performing their services without the permission of the natural parent or legal guardian, if a duly appointed surrogate parent has consented by signing the assessment or individualized education program.

\* \* \* \* \*